**GLORIA FRANCOIS McGOWAN, PAUL HOFFMAN and JANE HOFFMAN WALKER, Plaintiffs**

**v.**

**INEZ MATTHIAS HODGE, CYNTHIA MILLER, and all other persons claiming an interest in the property known and described as Parcel No. 14-I Estate John's Folly, Coral Bay Quarter, St. John, United States Virgin Islands, Defendants**

Civil No. 340/1988

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

January 2, 1992

MARIA TANKENSON HODGE, P.C., St. Thomas, V.I., *for plaintiffs*

CHARLOTTE POOLE DAVIS, ESQ., St. Thomas, V.I., *for defendants*

CHRISTIAN, *Senior Sitting Judge*

16

## OPINION

## I—INTRODUCTION

This matter is now before the Court on two Motions:

1. Motion for Summary Judgment filed by Plaintiffs on August 30, 1990; and

2. A second Motion filed by Defendants on November 8, 1991, that the undersigned order that he is disqualified to act as trial Judge in the case by reason of actual or implied bias.[1]

Because of the intent of the second Motion and the effect of our ruling thereon on the entire case, we will dispose of that Motion first.

This second Motion is styled "Motion to Vacate Order and Motion to Renew Motion to Disqualify Judge". This second recusal Motion is really a two-part Motion. The first part asks the Court to reconsider its Order dated October 16, 1991, denying the first Motion to Disqualify Judge, dated October 16, 1991. This first part of the second Motion to recuse is denied summarily as there is no reason for the Court to enter a vacatur in that instance.

For the reasons appearing hereafter, the second part of this second Motion to disqualify will also be denied.

## II—HISTORY OF THE CASE

In 1960, Lucy Smith, Executrix in the Estate of Fritz Allen Smith (Probate No. 10-1951, District Court) (hereafter "the Executrix"), on behalf of herself and the other heirs of the estate of the decedent, filed an action in the District Court of the Virgin Islands (Civil No. 294-1960), to quiet the title of Plaintiffs to 54.9 acres of Estate Friise, No. 13 Coral Bay Quarter, St. John, Virgin Islands. The undersigned Judge was the attorney who represented the Plaintiffs in that action. Service in the action was effected by publication. The only Defendant who filed an appearance in the case was Cynthia Miller, a daughter of Eliza George, one of the Defendants in District Court Civil No. 279-1967, action by Dudley et al. vs. Meyers et al., to Remove Cloud from Title, but she filed no Answer or other pleading within the time limited therefor by law. Thus, no issue

---

[1] The first Motion was dated October 16, 1991, and denied by Order of the Court dated October 16, 1991, on the ground that there was no factual basis for either of the two allegations on which the Motion was predicated.

was joined to be tried, all Defendants were adjudged in default, and after hearing on the 29th day of June, 1961, the Court granted Decree dated August 4, 1961, quieting the title of Plaintiffs in the property, both at law and in equity.

The Decree described the property as Estate Friise, No. 13 Coral Bay Quarter, St. John, Virgin Islands, by complete, specified metes and bounds, with an area of 54.9 acres, more or less. By Deed dated November 8, 1961, the Executrix, individually, and as Executrix of the Estate of Fritz Allen Smith, conveyed to George H.T. Dudley, Louis Hoffman, and Joseph McGowan, a portion (27.3 acres, more or less), of Estate Friise, No. 13 Coral Bay Quarter, St. John, Virgin Islands, which parcel was also described by complete, specified metes and bounds as the 54.9-acre parent parcel to which the District Court quieted the title of the Executrix and the other heirs of the deceased, Fritz Allen Smith, by Decree dated August 4, 1961, and which 27.3 acres was given the number P.W.D. No. D9-294-T61 in the cadastral office of the Virgin Islands Department of Public Works, and was described as Parcel No. 1 Estate Friise, No. 13 Coral Bay Quarter, St. John, Virgin Islands.[2]

On December 15, 1964, by Amended Decree issued in Civil Action No. 78-1964, an action to quiet the title of Alexander Meyers and Eliza George (hereinafter "Meyers and George") in Parcel No. 14-I John's Folly, St. John, Virgin Islands, against "all persons having or claiming an interest in and to this parcel", which, in its Findings of Fact dated October 20, 1964, the District Court found consisted of three (3) acres, which the Plaintiffs bought from Johanna James, and for which they received a deed which was never re-

---

[2] By Deed dated April 20, 1973, George H.T. Dudley conveyed his one-third undivided interest in Parcel No. 1 Estate Friise, No. 13 Coral Bay Quarter, to Louis Hoffman for $5,000.00, thus giving him a two-thirds undivided interest in the parcel.

By Adjudication entered in the Estate of Louis Hoffman, deceased, on September 11, 1989, his two-thirds interest was given, share and share alike, to his two children, Paul Hoffman and Jane Walker, nee Hoffman.

By Adjudication entered in the Estate of Joseph McGowan, deceased, on October 2, 1987, his one-third undivided interest was awarded to his widow, Gloria Francois McGowan. Thus the denomination of the Plaintiffs in this lawsuit.

corded and was destroyed in the hurricane of 1924, the Court quieted the title of Meyers and George in aforesaid three (3) acres.[3]

That because Meyers and George, immediately after the Baptiste survey and subdivision of John's Folly No. 14-I, proceeded to issue and record deeds to several grantees,[4] which Plaintiffs' predecessors in interest in No. 1 Estate Friise believed encroached on No. 1 Estate Friise, they commenced Civil No. 279-1967 in the District Court To Remove Cloud on [their] Title, in which they prayed "that the Court give [them] judgment against the Defendants—Alexander Meyers, Eliza George, Utah Lindo, Robert L. Chaney, Margaret M. Chaney, and Government of the Virgin Islands—ordering cancellation of said records from the offices of the public surveyor and Recorder of Deeds for the island of St. Thomas; further confirming Plaintiffs' title to said areas; and for such other and further relief as to the Court may appear necessary in the premises, including costs and reasonable attorney's fees".

The District Court identified the extent of the encroachments claimed by Plaintiffs and constituting the gravamen of the action as the 5.4 acres of their 27.3 acres bought from the Executrix and described as Parcel No. 1 Estate Friise. See Paragraph 2 of the Court's Memorandum Opinion dated September 12, 1968. The District

---

[3] Estate Friise and Estate John's Folly No. 14-I, Coral Bay Quarter, St. John, Virgin Islands, are contiguous parcels of real estate. Although the Decree in Meyers and George (D.C. Civil No. 78-1964) stated that 14-I John's Folly consisted of three acres only, according to Dudley et al. v. Meyers et al. (7 V.I. 472) at Page 480 et seq., the Third Circuit Court held that the July 19, 1965, survey of the late St. Thomas surveyor, Sydney A. Baptiste, made at the request of Meyers and George, established that the correct acreage of 14-I John's Folly was 5.684 acres. Both the District Court and the Third Circuit Court decided that this parcel was the parcel as to which ownership was the cause of the dispute between the parties.

[4] In 1965 Parcel No. 14-I John's Folly was subdivided into four parcels by Sydney Baptiste, at the request of Meyers and George, e.g., a new Parcel 14-I of 1.73 acres, a Parcel 14-IA of 1.54 acres, a Parcel 14-IB of 1.73 acres, and a Parcel 14-IC of .314 acre. By a series of conveyances, the new 14-I became vested in Defendant Alexander Meyers, to Parcel 14-IA in Defendant Utah Lindo, to Parcel 14-IB in Defendant Eliza George, and to Parcel 14-IC in Defendant Utah Lindo. In addition, in that same year, a strip of land through the tract containing 0.37 acre was conveyed by Meyers and George to the Government of the Virgin Islands for relocation of the old public road. Finally, by deed dated April 24, 1967, Alexander Meyers conveyed the new Parcel 14-I John's Folly of 1.73 acres to Defendants, Robert L. Chaney and Margaret M. Chaney. See 7 V.I. 472 at Page 480 et seq.

Court decided that to the extent this area was a part of the 27.3 acres bought by Plaintiffs, they acquired no title by the November 8, 1961, deed. The Court of Appeals for the Third Circuit affirmed. See 7 V.I. 472.

The Plaintiffs in the instant action allege that they retained the services of a licensed surveyor to mark the boundaries of No. 1 Estate Friise during the twelve months preceding April, 1988; that Defendants threatened the surveyor, chased him from the property belonging to Plaintiffs, caused stakes placed by the surveyor to be removed from the boundary of Plaintiffs' property, caused a fence to be erected which encroaches on Plaintiffs' property, and caused one or more trespassing signs to be placed on Plaintiffs' property without their knowledge or consent. Plaintiffs therefore prayed the Court for an award of compensatory damages and injunctive relief.

Defendants filed an Answer generally denying the allegations of the Complaint, and alleging the affirmative defense that at all times mentioned in the Complaint Defendants and/or members of their family owned and occupied the property where the fence and "No Trespassing" signs described in the Complaint are located, and that the fence and "No Trespassing" signs were situated on Defendants' property prior to the filing of the Dudley vs. Meyers case, Civil No. 67/279, which Plaintiffs lost in the District Court and which decision was affirmed by the Court of Appeals.

Defendants also filed a two-count Counterclaim. In Count I, they allege that it is the Plaintiffs and their agents who are the trespassers on Defendants' adjoining property; that they tampered with or removed bound posts, stakes and other boundary markers on Defendants' property; and that Plaintiffs wilfully and/or negligently damaged Defendants' fence and property.[5]

In Count II, Defendants allege that the boundaries between their property, Estate John's Folly 14-I, and Plaintiffs' property, Estate Friise No. 1, were adjudicated by the Court of Appeals for the Third Circuit, and Plaintiffs' claim of trespass runs counter to said prior adjudication; that Defendants, their ancestors and other members of their family have "owned, occupied and adversely possessed all the land and grazed their animals within the bounds of the fence and the area where the 'No Trespassing' signs appear

---

[5] Defendants mistakenly describe Defendants as Plaintiffs as to who the tortfeasors are.

20

for more than one hundred years"; and that therefore Plaintiffs' actions constitute continued harassment and have caused Defendants loss of income and emotional and mental distress. Defendants therefore prayed for dismissal of Plaintiffs' Complaint; for compensatory damages in the amount of $75,000.00, for punitive damages in the sum of $25,000.00; for a permanent injunction against further trespassing, harassment, damages and interference; for costs and attorney's fees; and for such other relief as the Court deems just and proper.

After the case had been assigned to two other Judges from the time of its filing on May 3, 1988, because of recusals, it was assigned to the undersigned. The aforesaid Motions to disqualify followed.

### III. DISCUSSION

■■ The foregoing factual background clearly indicates the long history of this litigation which involved the cases of 1960, 1964, and 1967 in the District Court, an appeal in the Court of Appeals, and now this fourth case in the Territorial Court. We recounted all these facts because we believe it was really necessary to identify and place into focus the true elements which the recusal statute requires us to consider as grounds for disqualification, i.e., representation of same parties and relating to same issues, and whether these two elements existed in the two relevant cases. In a Motion to disqualify, we believe the Judge in question should promptly remove himself from the case if by failing to do so he would violate any provisions of the recusal statute, 4 V.I.C., Section 284. On the other hand, we are just as firmly of the opinion that he should deny the Motion to disqualify himself if to do so would amount to a dereliction of the duties he has sworn to perform. This is especially so when, as here, the action has gone through three Judges, its disposition has been delayed for several years, and the Court is confronted with increasingly congested calendars and frustrated and irate litigants.

The present Motion of the Defendants that the present Judge disqualify himself is based on the fact, not brought to light when the first Motion was made, that the undersigned was the attorney for the Plaintiffs in their action to quiet title to the 54.9 acres of Estate Friise, No. 13 Coral Bay Quarter, St. John, Virgin Islands, in which they were successful; that Plaintiffs in the instant action are the

successors in interest of the Plaintiffs in the 1960 quiet title action, and while the persons are different, the interest of both Plaintiffs is the same; that Plaintiffs in the instant action have continuously relied on the Decree entered in the 1960 quiet title action at least as one of the sources of their title; that the primary issue in the instant case of trespass clearly calls into question the issue of the correct boundary between the two estates which issue was decided by the Court of Appeals for the Third Circuit in 1970; and that the main issue involved in the instant action, the boundary line between the two estates, was also the main issue litigated in the 1960 action in which the Judge acted as counsel for the Plaintiffs.

Respondents to the Motion contend that the boundary line between Estate Friise No. 1 and Estate John's Folly No. 14-I was not an issue in the 1960 quiet title action, the first time this issue having arisen being in the 1967 action in which that issue was decided clearly by the Court of Appeals for the Third Circuit; that the issue of ownership of the 54.9 acres of Estate Friise No. 1, Coral Bay Quarter, was the only issue involved in that case in which the present Judge acted as attorney for the Plaintiffs; that the issue of ownership of the two respective parcels of land does not exist in the instant action, only the issue of the boundary line between the two parcels, and that this boundary line issue was decided by the Court of Appeals in Dudley and therefore is res judicata; that the standard for disqualification prescribed by the statute is that it shall not take place unless it is plain that the Judge is disqualified, and that 4 V.I.C., Section 284 does not require disqualification of a Judge who represented a party in a prior action, where that party is not involved in a subsequent action, even if the two cases involved the same issues.

The pertinent portion of the applicable statute, 4 V.I.C., 284(3) states: "When in the action or proceeding or in any prior action or proceeding involving the same issues he [the Judge presiding] has been of counsel for any party to the action or proceeding", he shall not sit or act as Judge in such action or proceeding.

The second Motion of Defendants to disqualify has merit in one respect. While the Plaintiffs in the 1960 suit and in the instant action are different, they are predecessors and successors in interest, their interest is exactly the same, the ownership of the same parcel of land, Estate Friise, No. 13 Coral Bay Quarter, St. John, Virgin Islands. While the interest of the heirs of Fritz Allen Smith, the

22

Plaintiffs in the 1960 action, is in the entire 54.9 acres, the interest of the Plaintiffs in the instant action is in a substantial part of that 54.9 acres and would be non-existent if the ownership of the 54.9 acres did not exist. Therefore, we hold that there is a sufficient showing of privity and sameness of parties to disqualify if that were the only requirement for disqualification.

But the statute also calls for sameness of issue(s) in both the prior and present actions. Surely, the only issue in the 1960 action was who owned the 54.9 acres described as Estate Friise, No. 13 Coral Bay Quarter. There was absolutely no issue of the correct boundary line between Estate Friise No. 1 and John's Folly No. 14-I in that prior action. This issue did not arise until the 1967 Dudley case, when it was clearly decided by the District Court and even more clearly by the Court of Appeals in Dudley vs. Meyers. 7 V.I. 472 (3rd Cir. 1970).

■ Since there is no identity of both parties and issues in the 1960 case in which the undersigned served as attorney for the Plaintiffs and in the case sub judice, and since the recusal statute requires not only that there exist identity as to both these aspects, but also that such identity should plainly exist (see 4 V.I.C., Section 286), the second part of the second Motion to disqualify must be, and is, hereby denied. Where the parties *or* the res are the same but the issues different, there is no disqualification. 46 Am Jur 2d, Section 192 and cases cited.

This brings us to the Motion of Plaintiffs for Summary Judgment. It is clear from the decision of the Court of Appeals in Dudley vs. Meyers, 7 V.I. 472, that the Plaintiffs are the owners of No. 1 Estate Friise, and Defendants are the owners of No. 14-I Estate John's Folly. "As we have seen, the real controversy between the parties is not as to ownership of their respective parcels of land, but rather as to the location of the boundary line between them". Dudley at Page 482–483.

In Dudley, the Court of Appeals identified the area of land in dispute as follows:

"On July 31, 1961 Wells made a survey of a proposed subdivision of a portion of Estate Friise, designated Parcel No. 1, comprising the southwesterly portion of the estate and consisting of 27.3 acres, more or less. The southeasterly portion of Parcel ·No. 1, as shown by the Wells survey, lying between the old public road and the sea and consisting of about six acres, com-

23

prises the area in dispute which the defendants claim to be a part of Parcel 14I of Estate John's Folly". Dudley at Page 477. [Underscoring ours].

On Page 479 of the Opinion in Dudley, the Court emphatically ruled that this six-acre parcel of land belonged to Estate John's Folly, and not to Estate Friise.

"We turn then to the disputed tract of six acres which lies between the old public road and the sea in the southeasternmost portion of what the plaintiffs claim as Parcel No. 1 of Estate Friise and which the defendants claim as part of Parcel 14I of Estate John's Folly. The recorded title to Parcel 14I begins with a deed from D. Evans and others to Henry James dated July 28, 1871. Henry James was drowned at sea in 1891. It appears from the undisputed evidence and the district court found that the disputed tract was occupied by Johanna James, the widow of Henry James, from 1891 until her death on November 1, 1935. There she lived amidst a large family of children and grandchildren; there she cultivated a garden, and there she was buried. On the tract near where her house stood is a well which is known locally as the John's Folly Well. The northeast boundary of the disputed tract on which Johanna James lived follows an ancient fence running on a direct line from a small rocky inlet in the sea called 'Almond Rock' to an ancient hardwood post on the side of the old public road. The overwhelming weight of the evidence is that this line is a part of the ancient boundary between Estates Friise and John's Folly and that the disputed tract which lies to the southwest of it had always been a part of Estate John's Folly". [Underscoring ours].

There is no question but that by this language the Court of Appeals settled both the disputed ownership of the six acres in question and the boundary line between the two estates. And both the Movants and the Respondents to the Motion admit this in papers filed by them, so that these are no longer disputed questions in the case.

In Memorandum of Law filed on August 30, 1990, in support of their Motion for Summary Judgment, Plaintiffs state "[i]t was determined in the prior litigation that Parcel 14-I Estate John's Folly was located on the seaward side of the old public road and was bound with the southeastern portion of Parcel No. 1 Estate Friise". Dudley vs. Meyers, 7 V.I. 472, 479. This language may be intended

24

to paraphrase the language used by the Court of Appeals in describing the boundary line between the two estates as adjudicated in that action. But the language used by the Court is "[t]he northeast boundary of the disputed tract on which Johanna James lived follows an ancient fence running on a direct line from a small rocky islet in the sea called 'Almond Rock' to an ancient hardwood post on the side of the old public road". And in answer to Interrogatory No. 2 propounded by Plaintiffs to Defendants reading "Please provide a detailed description of the boundaries which Defendants claim describe parcel known and described as Parcel No. 14-I Estate John's Folly, Coral Bay Quarter, St. John, United States Virgin Islands", Defendants responded on August 23, 1988, "Estate John's Folly No. 14-I is bounded on the northeast side by an ancient fence running on a direct line from a small rocky islet in the sea called 'Almond Rock', to an ancient, hardwood post on the side of the old public road", obviously the exact language used by the Court of Appeals in describing the boundary line dividing the two estates. In their Memorandum in further support of their Motion for Summary Judgment, Plaintiffs assert Defendants are claiming more of No. 1 Estate Friise than the Circuit Court decided belongs to John's Folly No. 14-I. If so, this answer of Defendants to Interrogatory No. 2 negates that claim. So we need not waste any more time on that. Clearly this answer to Interrogatory No. 2 makes this a non-issue.

The Movants contend on Page 1 of their Motion that in response to requests for production of documents propounded by Plaintiffs requesting the production of surveys which Defendants believed accurately depicted the boundaries of Parcel No. 14-I Estate John's Folly, Defendants produced survey maps D3-259-T64 and F9-3275-T64; that Plaintiffs note that survey map D3-259-T64 depicts Parcel No. 14-I Estate John's Folly in its proper location, seaward of the old public road, but map F9-3275-T64 purports to depict Parcel No. 14-I Estate John's Folly in a location northeast of the public road on the southward side of the road.

Movants then proceed to state that Defendants are prevented by the language of the decision of the Court from claiming that the location of 14-I John's Folly is anywhere else than where the Court decided it was.

But whatever these maps may depict and no matter where the Plaintiffs or the Defendants may state is the correct location of No. 14-I John's Folly, 14-I John's Folly is located exactly where the

Court ruled it is located. And the Defendants in answer to Interrogatory No. 2, as we stated earlier, used the exact language of the Court in stating their position as to where the boundary line between the two parcels is. The one deviation in describing the location of the boundary line between the two estates, if it can be correctly called a deviation, is the paraphrasing of the Court's description of the line by the Movants.

Since no surveyor's maps, contentions of parties to the action, or action of this Court can in any way legally alter the decision of the Court of Appeals in 7 V.I. 472 as to either the area of land in dispute or as to precisely where the boundary line between Estate Friise No. 1 and Estate John's Folly No. 14-I is, we must adopt, in haec verba, as the Defendants do, the language used by the Court in deciding these two aspects of the case.

As if more emphasis were necessary that Plaintiffs' claim that they were the legal owners of the disputed six-acre parcel is meritless, the Court continued to state on Page 481 of the Dudley Opinion:

"[1] It is the primary contention of the plaintiffs in this case that their predecessor in title, the Estate of Fritz Allen Smith, deceased, obtained title to the disputed tract by the decree of the district court entered August 14, 1961 in the proceeding brought by Lucy Smith to quiet the title to Estate Friise and that that decree barred the defendants from claiming it as part of Parcel 14I of Estate John's Folly. The district court refused to accept this contention and, we think, rightly".

But there is more. On Page 483 of the Opinion in Dudley, Judge Maris writing for the Court adds:

"Since the defendants are not bound by the decree entered in the 1961 proceeding they were free in the present proceeding to controvert the finding of the court in that case that Fritz Allen Smith and his heirs had held adverse possession of Estate Friise since 1927, so far at least as that finding relates to the disputed tract which they claim and which the Wells survey included in Estate Friise. And this they did. The district court so found and the finding is supported by the great weight of the evidence which established that this tract was owned and occupied by Johanna James until her death in 1935 and by her descendants thereafter and that it was never occupied by Fritz Allen Smith, his widow, or the plaintiffs". [Underscoring ours].

26

The Court then proceeded to affirm the decision of the District Court dismissing the action of the Plaintiffs, the predecessors in interest of the Plaintiffs in the instant action, praying, inter alia, that they, and not the Defendants, be adjudged the owners in fee of the six-acre lot in dispute.

Based on the above, we hold that both the issue of the area of 14-I John's Folly and the issue of the precise location of the boundary line between No. 1 Estate Friise and 14-I Estate John's Folly as it existed prior to the Baptiste subdivision in 1965 were clearly decided by the Court of Appeals for the Third Circuit in Dudley vs. Meyers, 7 V.I. 472, and that both these issues are therefore res judicata.

But it is equally clear from the pleadings that there remain in the lawsuit several genuine issues as to material facts which make the granting of summary judgment in the entire case inappropriate, pursuant to the provisions of Federal Rules of Civil Procedure 56, generally, and subsection (d) of the Rule in particular, considering where the Court of Appeals placed the boundary line between No. 1 Estate Friise and No. 14-I John's Folly, viz:

1. Who trespassed on whose land?

2. Did Defendants chase Plaintiffs' surveyor off Plaintiffs' land or off Defendants' land? Obviously, if the Plaintiffs' surveyor were on the six acres the Court of Appeals ruled was John's Folly land, the answer to this question should not be difficult.

3. Who wrongfully removed stakes and bound posts?

4. Did Defendants wrongfully erect a fence and "No Trespassing" signs on Plaintiffs' land? And were these in the same location even before the 1967 Dudley vs. Meyers action as alleged by Defendants in their affirmative defense on Page 2 of their Answer?

5. Did Defendants adversely possess the land they claim and graze their animals within the bounds of the fence and the area where the "No Trespassing" signs appear for at least 100 years? Is this the same land that the District Court and the Court of Appeals in Dudley vs. Meyers, Page 479, decided belonged to Defendants, and is John's Folly land, to wit, the southeasternmost portion of what the Plaintiffs claim as Parcel No. 1 Estate Friise, as shown by the Wells survey lying between the old public road and the sea and consisting of about six acres?

6. Should damages (compensatory or compensatory and punitive) be awarded, and if so, to whom?

## IV. CONCLUSION

An Order will therefore be entered, denying the Motion to disqualify the Judge presiding; granting Plaintiffs' Motion for Summary Judgment in part; and, pursuant to Federal Rules of Civil Procedure 56(d), scheduling a pretrial hearing with the attorneys only to fix a date on which the remaining issues of the case can be tried, or otherwise disposed of.

## ORDER

This matter having come before the Court on Motion for Summary Judgment filed by Plaintiffs and a second Motion filed by Defendants (a) that the Court reconsider its Order denying Defendant's first Motion that the Judge recuse himself, which Motion was denied by the Court on October 16, 1991, and (b) that the Court recuse itself because of newly discovered evidence; and the Court having duly considered the submissions of the parties and the arguments of counsel; for the reasons stated in the Court's Opinion filed on even date herewith, it is hereby

ORDERED:

1. That all Motions that the Judge recuse himself as the presiding judge in the lawsuit are denied.

2. That Plaintiffs' Motion for Summary Judgment is granted to the extent that the boundary line between No. 1 Estate Friise and No. 14-I John's Folly is established, to wit, "by an ancient fence running on a direct line from a small rocky islet in the sea called 'Almond Rock' to an ancient hardwood post on the side of the old public road". Dudley at Page 479.

3. That the following genuine issues of material fact remain to be tried:

(a) Who trespassed on whose land?

(b) Did Defendants chase Plaintiffs' surveyor off Plaintiffs' land or off Defendants' land? Obviously, if the Plaintiffs' surveyor were on the six acres the Court of Appeals ruled was John's Folly land, the answer to this question should not be difficult.

(c) Who wrongfully removed stakes and bound posts?

(d) Did Defendants wrongfully erect a fence and "No Trespassing" signs on Plaintiffs' land? And were these in the same location even before the 1967 Dudley vs. Meyers action as alleged by Defendants in their affirmative defense on Page 2 of their Answer?

(e) Did Defendants adversely possess the land they claim and graze their animals within the bounds of the fence and the area

28

where the "No Trespassing" signs appear for at least 100 years? Is this the same land that the District Court and the Court of Appeals in Dudley vs. Meyers, Page 479, decided belonged to Defendants, and is John's Folly land, to wit, the southeasternmost portion of what the Plaintiffs claim as Parcel No. 1 Estate Friise, as shown by the Wells survey lying between the old public road and the sea and consisting of about six acres?

(f) Should damages (compensatory or compensatory and punitive) be awarded, and if so, to whom?

4. That a pretrial hearing between the Court and the attorneys only is hereby scheduled to take place on January 9th, 1992, at 12:00 noon.

## SUPPLEMENT TO OPINION DATED JANUARY 2, 1992

This action was commenced by Plaintiffs alleging that they retained the services of a licensed surveyor to mark the boundaries of No. 1 Estate Friise during the twelve months preceding April, 1988; that Defendants threatened the surveyor, chased him from the property belonging to Plaintiffs, caused stakes placed by the surveyor to be removed from the boundary of Plaintiffs' property, and caused one or more "No Trespassing" signs to be placed on Plaintiffs' property without their knowledge or consent. Plaintiffs therefore prayed the Court for an award of compensatory damages and injunctive relief.

Defendants filed an Answer generally denying the allegations of the Complaint, and alleging the affirmative defense that at all times mentioned in the Complaint Defendants and/or members of their family owned and occupied the property where the fence and "No Trespassing" signs described in the Complaint are located, and that the fence and "No Trespassing" signs were situated on Defendants' property prior to the filing of the Dudley vs. Meyers case, Civil No. 67/279, which Plaintiffs lost in the District Court and which decision was affirmed by the Court of Appeals.

Defendants also filed a two-count Counterclaim. In Count I, they allege that it is the Plaintiffs and their agents who are the trespassers on Defendants' adjoining property; that they tampered with or removed bound posts, stakes and other boundary markers

29

on Defendants' property; and that Plaintiffs wilfully and/or negligently damaged Defendants fence and property.[1]

In Count II, Defendants allege that the boundaries between their property, Estate John's Folly 14-I, and Plaintiffs' property, Estate Friise No. 1,[2] were adjudicated by the Court of Appeals for the Third Circuit, and Plaintiffs' claim of trespass runs counter to said prior adjudication; that Defendants, their ancestors and other members of their family have "owned, occupied and adversely possessed all the land and grazed their animals within the bounds of the fence and the area where the 'No Trespassing' signs appear for more than one hundred years"; and that therefore Plaintiffs' actions constitute continued harassment and have caused Defendants loss of income and emotional and mental distress. Defendants therefore prayed for dismissal of Plaintiffs' Complaint; for compensatory damages in the amount of $75,000.00, for punitive damages in the sum of $25,000.00; for a permanent injunction against further trespassing, harassment, damages and interference; for costs and attorney's fees; and for such other relief as the Court deems just and proper.

In an Interlocutory Opinion issued by the Court, dated January 2, 1992, we denied two Motions made by Defendants that the Court recuse itself from the case; granted a Motion made by Plaintiffs for summary judgment to the effect that as a result of the decision issued in Dudley vs. Meyers, 7 V.I. 472 (3rd Cir. 1970), the boundary between No. 1 Estate Friise and No. 14-I Estate John's Folly, Coral Bay Quarter, St. John, U.S. Virgin Islands, and the area of No. 14-I Estate John's Folly had become res judicata; and scheduled a pretrial hearing to take place at noon on January 9, 1992, for the purpose of fixing a time certain to try what we considered to be several genuine issues as to material facts which remained unresolved in the case.

The trial of these issues of fact was scheduled to take place on Tuesday, February 11, 1992, at 11: 00 a.m. But as a result of observations made by Counsel at the pretrial, we deem it necessary to clar-

---

[1] Defendants mistakenly describe Defendants as Plaintiffs as to who the tortfeasors are.

[2] According to the Danish system of numeration of island quarters, estates and subdivisions of estates, this parcel should have been described as "Estate Friise No. 13-1, Coral Bay Quarter, St. John, V.I." See Dudley vs. Meyers, 7 V.I. 472 (1970), at Page 474–475.

ify our holding made in the Summary Judgment portion of our Opinion of January 2, 1992. There we stated "[w]e hold that both the issue of the area of 14-I John's Folly and the issue of the precise location of the boundary line between No. 1 Estate Friise and 14-I Estate John's Folly as it existed prior to the Baptiste subdivision in 1965 were clearly decided by the Court of Appeals for the Third Circuit in Dudley vs. Meyers, 7 V.I. 472, and that both of these issues are therefore res judicata". See Dudley at page 477, and Dudley at page 479, respectively.

We want to make it very clear. that by this language the Court meant that as a result of Dudley the area of Parcel No. 1 Estate Friise as it appears on Survey Map D9-294-T61, prepared by N.O. Wells, dated July 31, 1961, which was conveyed by Executrix Lucy Smith to the predecessors in title of Plaintiffs in the instant action, by deed dated November 8, 1961, remains unchanged except *only* for the southeasterly portion of the parcel, which lies between the old public road and the sea and which comprises about six acres. See Dudley at Page 477.

At the aforesaid pretrial, Counsel for Defendants strongly disputed the correctness of this holding, which was verbally explained by the Court, on the ground that some of the parties defendant in the instant action were not parties in the Dudley action, and therefore the doctrines of res judicata and collateral estoppel do not apply to them. We disagree. They are all successors in interest and are therefore bound by the decision in Dudley which applied to their predecessors in interest, the Defendants in the Dudley case. See Restatement of Judgments (Second) Sections 43 and 45.

Moreover, in Request for Production of Documents served on Defendants in the instant action, dated June 23, 1988, and filed on the following day (Production No. 1), they were asked: "Please produce every document which you claim constitutes a part of the record of Defendants' chain of title to the property which is the subject of this litigation", to which they replied on August 30, 1988, "Attached". The only document they attached was Deed of Gift dated September, 1965, by which Alexander Meyers and Eliza George, Grantors, conveyed "an unnumbered parcel of 14-I Estate John's Folly, Coral Bay Quarter, St. John, Virgin Islands" to Ebenezer Meyers, Franklin Meyers, Herman Meyers, Sanford Meyers, Alexander Meyers, Edwardo Meyers, Quinland Meyers,

31

David Meyers, Emanuelita Matthias, Evylene Matthias, and Ursulita Matthias, Grantees.

Secondly, on August 23, 1988, Defendants were asked in Interrogatory No. 3: "Please list the names and addresses of all persons known to you who claim and (sic) interest in the property known and described as Parcel No. 14-I Estate John's Folly, Coral Bay Quarter, St. John, United States Virgin Islands", to which they answered the following:

"(1) Heirs of Ebenezer Meyers
   (a) Agatha Meyers
      Anna's Retreat
      St. Thomas, V.I.
   (b) Others unknown at this time
(2) Heirs of Frank Meyers
   (a) Olencia Hodge
      Bovoni Estate
      St. Thomas, V.I.
   (b) Others unknown at this time
(3) Herman Meyers
      Agnes Fancy
      St. Thomas, V.I.
(4) Heirs of Sanford Meyers
   (a) Cynthia Miller
      P.O. Box 4033
      St. John, V.I.
(5) Heirs of Alexander Meyers
   (a) Ishmael Meyers
      15-31 Frenchman's Bay
      St. Thomas, V.I.
   (b) Ira Meyers
      Estate Mafolie
      St. Thomas, V.I.
   (c) Others unknown at this time
(6) Heirs of Eduardo Meyers
   (a) Araminta Meyers
      Address unknown
   (b) Rosalita Meyers
      Vester Gade No. 4A & 4B
      St. Thomas, V.I.

(7) Heirs of Emanuelita Meyers
  (a) Evadney Mulcare
      Savan
      St. Thomas, V.I.
  (b) Others unknown at this time
(8) Heirs of Quinland Meyers
  (a) Eddie Meyers
      Address unknown
(9) Heirs of David Meyers
  (a) Les Meyers
      P.O. Box 3897
      St. Thomas, V.I.
  (b) George Meyers
      Address unknown
  (c) Rubia Meyers
      Address unknown
  (d) Eunice Meyers Skinner
      21 St. James Place
      Brooklyn, New York
(10) Heirs of Evylena Meyers Matthias
  (a) Inez Hodge
      Building 20, Apartment 155
      Paul M. Pearson Gardens
      St. Thomas, V.I.
(11) Heirs of Ursulita Meyers Matthias
  (a) Gladys Matthias
      St. Thomas, V.I.
  (b) Amy Matthias Fleming
      St. Thomas, V.I.
  (c) Verna Matthias
      Annas Retreat
  (d) Verniece Matthias
      St. Thomas, V.I.
  (e) Paul George
      Queen Louise Home
      St. Thomas, V.I.

(f) Cornelius Matthias[3]
   St. John, V.I.

Asked in Interrogatory No. 2 on August 23, 1988, "Please provide a detailed description of the boundaries which Defendants claim describe the parcel known and described as Parcel No. 14-I Estate John's Folly, Coral Bay Quarter, St. John, United States Virgin Islands", they replied: "Estate John's Folly No. 14-I is bounded on the northeast side by an ancient fence running on a direct line from a small rocky inlet (sic) in the sea called 'Almond Rock', to an ancient hardwood post on the side of the old public road; further boundary descriptions of Estate John's Folley (sic) will be submitted by surveyor".

Finally, in answer to Interrogatory No. 4 propounded on August 23, 1988, which reads: "Please list and describe in detail each document which forms a record of defendant's (sic) chain of title to the property which is the subject of this litigation and where said document is recorded or can be found", they replied: "Deed from Alexander Meyers and Eliza George to Ebenezer Meyers, Frank Meyers, Herman Meyers, Sandford Meyers, Alexander Meyers, Eduardo Meyers, Emanuelita Meyers, Quinland Meyers, David Meyers, Evelyn Meyers and Ursulita Meyers; prior and subsequent records of Recorder of Deeds on 14I Estate John's Folly; District Court Opinion in the case of Dudley, Hoffman, and McGowan vs. Meyers, George, Lindo, Cheney, & Gov't. of the V.I., filed with plaintiffs' complaint in this case; Adjudication in Probate No. 10/1957, dated May 11, 1962; Action to Quiet Title, Civil No. 294-1960 (See Recorder of Deeds Public Records). Prior and subsequent records of Recorder of Deeds on Estate Friise No. 1 and 13AA".[4]

---

[3] Note that the persons listed as "all the persons . . . who claim an interest in the parcel to which ownership is disputed, No. 14-I John's Folly" are the heirs of the eleven grantees of the unnumbered parcel granted by Alexander Meyers and Eliza George in the September, 1965, deed.

[4] Note that here again in listing all the documents which Defendants claim form a record of their chain of title they mention the September, 1965, Alexander Meyers and Eliza George deed to the eleven grantees; the Opinion in Dudley which adjudicates the effect of that deed; the adjudication in Probate No. 10/1957 dated May 11, 1962; the quiet title action sub nom. Civil 294-1960 and prior and subsequent records on Estate Friise No. 1 and No. 13AA Friise. It is not clear to us what the relevance of 13AA Estate Friise has to the case, but all the other records are subject to the Dudley decision.

As we analyze to determine if any parties in the instant action were not parties in the prior action, the decision in which binds them, we must bear in mind that the Amended Complaint in the Dudley vs. Meyers action was to remove a cloud on the title of Parcel No. 1 Estate Friise alleged to have been caused by the subdivision of No. 14-I John's Folly and the issuance of deeds to the parcels resulting from said subdivision, namely: 14-I, 14-IA, 14-IB, 14-IC, and a roadway to the Government of the Virgin Islands (Paragraphs 3 to 5 of the Amended Complaint); that the answer to that Amended Complaint admitted that the tract of land acquired by the Plaintiffs was in Estate Friise but denied only that "such tract includes the defendants' adjacent land in Estate John's Folly known as Parcel No. 14-I Estate John's Folly (and all the subdivisions thereof, including the Government's public road through it and known as Parcels 14-I, 14-IA, and 14-IC, etc., which has belonged to these defendants and/or their forbears since 1871". See P. 2 of said Answer. [Underscoring ours].

Estate Friise No. 1 as shown on the Wells' survey was the only piece of land claimed by the Plaintiffs in Dudley. Estate John's Folly No. 14-I was the only piece of land with an area no larger than that indicated in the 1965 Baptiste subdivision which was claimed by the Defendants.

Now to the analysis. The only document produced which Defendants claim constituted a part of their chain of title was the 1965 deed from Alexander Meyers and Eliza George. (Production No. 1 above).

The only persons who Defendants alleged in Answer to Interrogatory No. 3 claim an interest in 14-I John's Folly are the successors in interest of the grantees who took title from Alexander Meyers and Eliza George. And both Alexander Meyers and Eliza George were served in the 1967 action, appeared by Counsel, and litigated the action in both the District Court and the Court of Appeals. Since the grantees of that 1965 deed took an unnumbered parcel of 14-I John's Folly, the decision as to the entire 14-I John's Folly applied to them as their unnumbered parcel was a part of the whole lot.

Certainly, the decision of the Court: (1) extends to no more than six acres constituting John's Folly 14-I; (2) establishes the exact location and size of the area—the southeasterly portion of Parcel No. 1 as shown by the Wells' survey, lying between the old public road

35

and the sea and consisting of about six acres—(3) reduces Parcel No. 1 Estate Friise bought by Plaintiffs' predecessors in interest by that six acres; and (4) defines the boundary between No. 1 Estate Friise and 14-I John's Folly in the following language: "The northeast boundary of the disputed tract . . . follows an ancient fence running on a direct line from a small rocky islet in the sea called 'Almond Rock' to an ancient hardwood post on the side of the old public road". Dudley at pp. 477, 479, 481, and 483. These points being all that Dudley decided, they are the only ones that are res judicata. They include all the land comprising 14-I Estate John's Folly to which the title of Alexander Meyers and Eliza George was quieted in the 1964 action decided by decree dated October 20, 1964; all the land conveyed by Meyers and George to all the eleven grantees listed in the September, 1965, deed conveying a part of 14-I John's Folly; and all the land subdivided by Sydney Baptiste at the request of Meyers and George in his survey of July 19, 1965, above referred to.

Since the Dudley case decided these matters from March 13, 1970, they are res judicata, and we are powerless to do anything about it. All lawsuits must come to an end sometime.

Besides, the Dudley decision gave the Defendants in Dudley, including Meyers and George, the predecessors in interest and the only source of title and standing of all the Defendants in the instant action, according to the above-mentioned production of records and answers to interrogatories filed, all of the land in dispute, the entire 14-I Estate John's Folly, so that none of these Defendants could possibly be prejudiced.

Thus the present status of the matter is: Plaintiffs are the lawful owners of all the land appearing on the Wells survey of July 31, 1961, Map No. D9-294-T61, describing Parcel No. 1 Estate Friise, No. 13 Coral Bay Quarter, minus *only* the disputed Parcel No. 14-I Estate John's Folly, comprising six acres, more or less, located in and being the southeasterly portion of No. 1 Estate Friise with northeastern boundary as specified above.

Therefore, if Defendants are entering on any of No. 1 Estate Friise defined on the Wells survey other than the six acres as defined above, they are trespassing on Plaintiffs' land. Conversely, if Plaintiffs are entering on any land in the area other than the land defined on the Wells map as Parcel No. 1 Friise, minus the six acres which the Court of Appeals described as No. 14-I John's Folly and

decided is the property of the Defendants, then Plaintiffs are the trespassers.

It is the hope of the Court that the above clarification of our Order dated January 2, 1992, is adequate to at least put beyond any reasonable doubt what the Court intended by that Order.

If either the Plaintiffs or the Defendants are referring to any land other than that included in the Wells map, called No. 1 Estate Friise, including the six acres located on the southeasterly part thereof described as John's Folly No. 14-I, such reference is inappropriate as such land was not involved in the Dudley case, except as to the Counterclaim of Defendants in the instant case, that Plaintiffs are trespassing on their land, which arguably could be land other than that indicated on No. 1 Estate Friise, D9-294-T61, the Wells map, which may be proved at trial on the 11th proximo.

In this analysis we are required to take judicial notice of the prior proceedings relative to the issues involved in the instant action, namely: Opinions of the District Court and the Court of Appeals in Dudley vs. Meyers; the Amended Complaint and Answer thereto; the Defendants' affidavit and brief filed in that case; the findings of fact, decree and amended decree filed in District Court Civil No. 78-1964, Action for Quiet Title to 14-I John's Folly filed by Alexander Meyers and Eliza George. 6 Moore's Federal Practice pp. 56–157. See also Landy v. Federal Deposit Ins. Corp. (3rd Cir. 1973) 486 F.2d 139, cert. denied (1974) 416 U.S. 960. Besides, both parties in the instant case admit that Dudley decided the boundaries between the two disputed parcels, No. 1 Estate Friise and 14-I John's Folly (see page 2 of Plaintiffs' Memorandum in Further Support of Plaintiffs' Motion for Summary Judgment, and Paragraph 6 of the Answer of Defendants in the instant case, in which Defendants allege ". . . the Third Circuit Court's Opinion, dated March 13, 1970, in Dudley vs. Meyers, Appeal Nos. 17580 and 17582, which previously adjudicated the issue of boundaries between Estate Friise No. 1 and Estate John's Folly No. 14-I . . ."

Nor can there be any dispute as to who owns Parcel No. 1 Estate Friise and who owns Parcel No. 14-I Estate John's Folly. The Plaintiffs' predecessors in interest in the 1967 Dudley case admit they own No. 1 Estate Friise. The Defendants also admit this, but deny that Plaintiffs own the disputed six acres known as John's Folly 14-I, claiming they own that parcel, so that No. 1 Estate Friise is now 27.3 acres minus the approximately six acres which comprises

37

John's Folly 14-I. Both the District Court and the Court of Appeals so ruled. So that not only is the ownership of the disputed Parcel 14-I Estate John's Folly decided, but also the area of both 14-I John's Folly and of No. 1 Estate Friise and the boundary line between the two parcels. There is no question that these judicial determinations were made in Dudley et al vs. Meyers et al, 7 V.I. 472 (1970), nor that the present Defendants are successors in interest of the Defendants in Dudley. See responses to Demand for Production of Documents and to Interrogatories above-mentioned. Surely, Defendants cannot be understood to contend that the decision rendered in the prior action involving the same issues of ownership of land in question and common boundaries separating the adjoining parcels which bound their predecessors in interest do not bind them as well. Restatement (Second) of Judgment, Section 43.[5]

In Plaintiffs' Supplemental Brief in Support of Motion for Summary Judgment, they state on Page 6 that the Defendants in the instant case, the successors in interest of the Defendants in the Dudley case, appear to be making a claim that more than the six acres appearing on the Wells map which comprise No. 14-I John's Folly, which Dudley ruled belongs to them, is also their property. Movants contend that if it is a fact that Defendants in the instant action are making such a claim at this time, twenty years after the Dudley decision, they are acting contrary to the provisions of Rule 13(a) of the Federal Rules of Civil Procedure as such a claim falls in the category of compulsory counterclaims which should have been pleaded, if at all, during the prosecution of that action. We agree. See also Savarese v. Agriss, 883 F.2d 1194 (3rd Cir. 1989). Moreover, if indeed Plaintiffs in Dudley and their successors in interest were in fact in what would clearly be adverse possession of any such land owned by Defendants and their predecessors in interest from 1967 to the present time, any such counterclaim could be met by

---

[5] That section of the Restatement provides in part as follows: "Effect of Judgment Determining Interests in Property on Successors to the Property"

A judgment in an action that determines interests in real or personal property:

(1) With respect to the property involved in the action:

(a) Conclusively determines the claims of the parties to the action regarding their interests; and

(b) Has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself.

claim and right of title by adverse possession for fifteen years or more interposed by Plaintiffs. See 28 V.I.C., Section 11.

To summarize and further clarify, we give the chain of title provided by our analysis:

1. In February, 1964, Alexander Meyers and Eliza George filed a complaint in an action to quiet title in the district court, division of St. Thomas and St. John, at Civil No. 78-1964, entitled "Alexander Meyers and Eliza George, Petitioners, vs. All persons having or claiming an interest in and to Parcel 4i John's Folly, St. John, V.I., Respondents." The complaint alleged that Alexander Meyers and Sandford Meyers had purchased Parcel 4i of John's Folly from Johanna James in 1919, that the instrument of transfer had been destroyed, in the hurricane of 1924 before it was recorded, that Sandford Meyers had died in 1957 and Eliza George was his widow and that Alexander Meyers, Sandford Meyers and Eliza George had been in possession of the property since 1919. The complaint sought a decree declaring Alexander Meyers and Eliza George, widow of Sandford Meyers, to be the owners of Parcel 4i. After a hearing at which no respondents appeared, the court entered a decree on October 20, 1964, declaring the title to Parcel 4i to be vested in Alexander Meyers and Eliza George. The number of the parcel as stated in that proceeding was obviously incorrect since Estate John's Folly on the records is estate No. 14 of Coral Bay Quarter, not No. 4. The petitioners accordingly moved to amend the complaint and decree to designate the parcel in question as Parcel 14I of John's Folly and the court, on December 15, 1964, filed an amended decree declaring that title to Parcel 14I, John's Folly, St. John, was vested in Alexander Meyers and Eliza George. Dudley at Page 480.

2. On July 19, 1965, Meyers and George employed Sydney Baptiste to survey 14-I John's Folly, which survey indicated that 14-I John's Folly comprised 6.68 acres, more or less. See Amended Complaint in Dudley et al vs. Meyers et al (Civ. D.C. 279/1967).

3. By deed dated September, 1965, Meyers and George conveyed an unnumbered parcel of 14-I John's Folly to eleven grantees, namely: Ebenezer Meyers, Franklin Meyers, Herman Meyers, Sanford Meyers, Alexander Meyers, Edwardo Meyers, Quinland Meyers, David Meyers, Emanuelita Matthias, Evylena Matthias, and Ursulita Matthias.

4. In 1967, the District Court stated the area of 14-I John's Folly was about 5.4 acres of No. 1 Estate Friise as depicted on the Wells

map, and that this acreage belonged to Defendants' predecessors in title. Dudley et al vs. Meyers et al (D.C. Civil 279/1967, Memorandum Opinion at Pages one and three).

5. In 1970, the Court of Appeals affirmed the decision of the District Court and stated that the entire area known as John's Folly No. 14-I, which Dudley claimed was legally a part of No. 1 Estate Friise, had an area of about 6.68 acres, and was not a part of Estate Friise No. 1, but belonged to the Defendants, Meyers and George, and their successors in interest. Not only is the above chain of title and ownership established by the pleadings and discovery in the instant action, but it was also established in the pleadings in the District Court in Dudley and on appeal. (See Amended Complaint and Answer in Dudley, especially Paragraphs 1 and 2).

Therefore, the above chain of title shows that Meyers and George are the only predecessors in title of Defendants in the instant action as to ownership of 14-I John's Folly, and binds all persons claiming an interest therein. This includes all the named Defendants in the instant action. See Restatement (Second) of Judgments, Section 43. Besides, as noted above, even if any of the successors in interest of the Defendants in the Dudley action were not served in the instant action, they could not be prejudiced as the Dudley Court decided in favor of Meyers and George and gave the entire area which constituted 14-I John's Folly to them.

In this connection, Defendants moved the Court to dismiss the instant action on the ground that Plaintiffs failed to name and serve indispensable parties, citing Rules 12(b)(6), (7) and 19(b) of the Federal Rules of Civil Procedure in support thereof. Respondents answered that while they believe persons other than those specifically named in the Complaint participated in the tortious conduct complained of, it would be improper to name anyone until Plaintiffs are certain that they did participate, lest Plaintiffs' Counsel become liable to imposition of sanctions by virtue of FRCP 11; that the named Defendants are tortfeasors no matter how many other unnamed persons participated in their wrongful conduct, Restatement (Second) of Torts, Section 876 (1979); that all Defendants remain jointly and severally liable for the harm caused to Plaintiffs, Section 875 id.; and joinder of all contributing tortfeasors is unnecessary, Section 882 id. We need add only that, as can be seen from our analysis above, all the persons who can possibly have standing to be parties have been included based on the chain of title indicat-

40

ing who are successors in interest in the property in question and therefore were and are bound by the prior decisions, and even if they were not served, they could not be prejudiced thereby as title to all the property, the ownership of which was at issue in the Dudley action, was awarded to the Defendants' predecessors in interest. As to tortfeasors who may not be impleaded in the action, the operative public policy here is to induce people not to be tortfeasors, joint or otherwise, by making all tortfeasors jointly and severally liable.