**J. Vincent SCALEA, Appellant,**

**v.**

**SCALEA'S AIRPORT SERVICE, INC. and Michael Scalea, Sr., Individually, and Michael Scalea, Jr., Individually, Appellees.**

No. 86–1745.

United States Court of Appeals, Third Circuit.

Argued July 7, 1987.

Decided Nov. 24, 1987.

---

Alan S. Gold (argued), Griffith & Burr, P.C., Philadelphia, Pa., for appellant.

Michael F.X. Gillin (argued), Michael F.X. Gillin & Associates, Media, Pa., for appellees.

Before HIGGINBOTHAM and BECKER, Circuit Judges and BARRY, District Judge.*

## OPINION OF THE COURT

PER CURIAM:

The district court, following a trial to the bench, has given the parties and this court too little in terms of findings of fact and conclusions of law as to two of the three theories raised by plaintiff. We are compelled to remand.

Given this disposition, there is no necessity to set forth the facts at great length. In 1977, J. Vincent Scalea, appellant herein,[1] founded Scalea's Airport Service of Philadelphia, an interstate and intrastate trucking company incorporated in Pennsylvania and specializing in the pickup and delivery of air freight. At or about the same time, Scalea sold his brother, Michael Scalea, Sr., a fifty percent ownership interest in the corporation and two years later hired his nephew, Michael Scalea, Jr. J. Vincent Scalea had extensive experience in the air freight business and, at the time they became associated with the corporation, Michael Scalea, Sr. and his son did not.

In 1980, father and son offered to purchase J. Vincent Scalea's interest in the corporation. On October 2, 1980, the corporation and J. Vincent Scalea entered into three agreements: a stock purchase agreement, a consulting agreement, and an individual pension plan agreement, and J. Vincent Scalea retired. The corporation purchased his stock, hired him as a consultant, and pension payments commenced on January 10, 1983 when Scalea terminated the consulting agreement, thus triggering payment under the pension plan agreement. Under this agreement, Scalea was to receive the greater of $19,600 annually or 2.5 percent of the corporation's gross receipts for the year, to a maximum of $48,800. It is the amount of payments received under the pension plan agreement that is the subject of this litigation between Scalea and the corporation and Michael Scalea, Sr. and Jr., appellees herein.

Also in October, 1980, Michael Scalea, Jr. and John McKenna, the son-in-law of Michael Scalea, Sr., formed Scalea's Airport Service of Baltimore, a Maryland corporation which, like its counterpart in Pennsylvania, engaged in the air freight trucking business. Scalea, Jr. and McKenna are officers of both corporations and the only shareholders of the Maryland corporation; Scalea, Sr. is now the sole shareholder of the Pennsylvania corporation.

The evidence, according to J. Vincent Scalea, disclosed that the two corporations were effectively merged or consolidated; that customers of the Pennsylvania corporation were diverted to the Maryland corporation or led to believe the corporations were one and the same and that he was still active in the business; and, therefore, that revenues from customers of the Pennsylvania corporation which were assigned to the Maryland corporation should have been but were not taken into account in computing the amount of the payments he should have received under the pension plan agreement.[2] Thus, he argues, had 2.5

---

* Hon. Maryanne Trump Barry, United States District Judge for the District of New Jersey, sitting by designation.

1. Appellant's correct name is Vincent Joseph Scalea. (59a). We will, however, refer to him in the course of this opinion by the name by which he has been referred to in the pleadings and throughout this litigation.

2. Scalea relies upon paragraph 7(a) of the Pension Plan Agreement:

If [the Pennsylvania] Company shall at any time be merged into or consolidated with any other corporation, or if substantially all of the assets of Company, including its business and good will, are transferred to another corporation, association, individual or partnership, the provisions of this Agreement shall be binding upon and inure to the benefit of the

percent of the revenues of the Maryland corporation been taken into account, he would have received the $48,800 maximum amount permitted under the pension plan agreement for each of the years 1983, 1984, and 1985, instead of the $31,200, $48,-027.88, and $43,448.25 he in fact received, respectively, in those years. The difference, hence the amount in dispute, is $23,-679.87.

While appellees dispute Scalea's characterization of the evidence and the conclusion to be drawn therefrom, it is not disputed that at trial J. Vincent Scalea raised three different theories of breach of contract. First, he contended that there was an implied covenant of good faith and performance in the contract and that defendants breached that covenant by diverting business from Scalea's Airport Service of Philadelphia to Scalea's Airport Service of Baltimore. Second, he contended that the Pennsylvania corporation had been consolidated with the Maryland corporation within the meaning of paragraph 7 of the pension plan agreement and, thus, under the agreement had the right to 2½% of Baltimore's gross receipts for the years 1983, 1984, and 1985. Finally, he contended that it was the intent of the parties to the agreement that Scalea receive 2½% of the proceeds of any corporation formed after Scalea left the employ of Airport Service of Philadelphia if that corporation engaged in substantially the same business.[3]

Following a two day bench trial and the submission by the parties of extensive proposed findings of fact and conclusions of law, the district court issued a 2½ page memorandum opinion, half of which merely identified the parties, the agreements, and plaintiff's contentions. The court concluded that "[n]one of the agreements contains

language providing for the result for which plaintiff contends" (228a) and "[t]he Pennsylvania corporation did not breach its contract with plaintiff" (229a), conclusions wholly unadorned with any recitation of the facts upon which the court relied or the reasoning which prompted those conclusions. The remainder of this brief opinion rejected J. Vincent Scalea's first theory, i.e. that the obligation to perform the contract in good faith was breached by the formation of the Maryland corporation and the diversion to it of customers secured by Scalea for the Pennsylvania corporation. That ruling is not challenged here as being either inadequate or erroneous.

Appellant's argument in this court is simply stated: the district court made no findings of fact and, at best, the most cursory conclusion of law concerning his second and third theories; indeed, it is unclear as to whether the court even considered those theories. Even if, the argument continues, the district court's statement that "[n]one of the agreements contains language providing for the result for which plaintiff contends" can be deemed to constitute a consideration and rejection of those two theories, there is no indication of how the court reached that conclusion or what evidence was considered and, thus, no basis upon which we can review that conclusion.

We agree. Fed.R.Civ.P. 52, as pertinent here, is mandatory:

> In all actions tried upon the facts without a jury or with an advisory jury, the court *shall* find the facts specifically and state separately its conclusions of law thereon....

(Emphasis added). *See also Tacynec v. City of Philadelphia,* 687 F.2d 793, 800 (3d

---

corporation resulting from such merger or consolidation, or of the transferee to which such assets shall be transferred. This paragraph shall also apply in the event of any subsequent merger, consolidation or transfer.

**3.** It is similarly not disputed that the contours of the two theories upon which we will remand for findings of fact and conclusions of law were developed only after the filing of the complaint. Count One of the complaint alleged the failure to make payments required by the consulting

and pension plan agreements; Count Two alleged that Michael Sr. and Michael Jr., as sureties for the Pennsylvania corporation, were responsible for the payments; and Count Three alleged that Michael Sr. and Michael Jr. intentionally interfered with the agreement by diverting business from the Pennsylvania corporation to other entities to reduce the payments received by J. Vincent Scalea and by directing the corporation not to pay Scalea the amount due him.

Cir.1982), *cert. denied*, 459 U.S. 1172, 103 S.Ct. 819, 74 L.Ed.2d 1016 (1983). We decline appellant's invitation to construe the contract in the first instance and will remand for findings of fact and conclusions of law.

It is particularly unfortunate that this case cannot now be concluded for the amount in dispute is not high by today's standards and the attorneys' fees will continue to mount as this litigation, which has pitted family members against each other, is compelled to proceed. But we are a reviewing court which has been given too little to review and the conclusion of this litigation must await another day.

Each party to bear its own costs.