**INEZ MATTHIAS HODGE, CYNTHIA MILLER, and all other persons claiming an interest in the property known and described as Parcel No. 14-I Estate John's Folly, Coral Bay Quarter, St. John, United States Virgin Islands, Appellants**

v.

**GLORIA FRANCIOS McGOWAN, PAUL HOFFMAN and JANE HOFFMAN WALKER, Appellees**

D.C. Civil No. 1992-84

T.C. Civil No. 340-1988

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 23, 1993

CHARLOTTE POOLE DAVIS, ESQ., St. Thomas, V.I., and KWAME O. MOTILEWA, ESQ., St. Thomas, V.I., *for Appellants*

MARIA TANKENSON HODGE, ESQ. (HODGE AND FRANCOIS), Charlotte Amalie, V.I., *for Appellees*

BROTMAN, *Senior Judge* of the United States District Court for the District of New Jersey, Sitting by Designation; CONABOY, *Senior Judge* of the United States District Court for the Middle District of Pennsylvania, Sitting by Designation; and CABRET, *Judge* of the Territorial Court of the Virgin Islands, St. Croix Division, Virgin Islands, Sitting by Designation

On Appeal from the
Territorial Court of the Virgin Islands

## OPINION OF THE COURT

### I. FACTUAL BACKGROUND

The origins of this boundary dispute date back to the 1960's. In 1960, Lucy Smith, executrix of the Estate of Fritz Allen Smith, brought an action to quiet title against all persons owning or claiming an interest in 54.9 acres of Estate Friise in Smith v. 54.9 Acres of Land, St. T. Civ. No. 294-1960 (D.V.I. 1961), based on a survey performed by N.O. Wells on December 16, 1960. Dudley v. Meyers, 7 V.I. 472, 476–77 (3d Cir. 1970); see also App. at 33–34. Cynthia Miller, on behalf of her aunt and uncle, was the only defendant to appear. Dudley, 7 V.I. at 477. Neither Miller nor the other defendants filed answers or any other pleadings in the case. Id. The court entered a default judgment quieting title to Estate Friise, as described in the complaint and Wells survey, in favor of Lucy Smith in August 1961. See App. at 33–34; see also Dudley, 7 V.I. at 477.

On July 31, 1961, N.O. Wells surveyed a proposed 27.3 acre subdivision of Estate Friise denominated as "Parcel No. 1 Estate

Friise."[1] Dudley, 7 V.I. at 477–78; see also App. at 183 (Wells survey map)[2] In November 1961, Lucy Smith subsequently conveyed Parcel No. 1 Estate Friise to George Dudley, Louis Hoffman and Joseph McGowan, the predecessors in interest to the plaintiffs/appellees in this case. Id.

In February 1964, Alexander Meyers and Eliza George, the predecessors in interest to the defendants in this case, successfully sued to quiet title in Parcel No. 14I Estate Johns Folly. Id. at 480. On July 19, 1965, Sydney Baptiste surveyed four proposed subdivisions of Parcel No. 14I Estate Johns Folly: a new Parcel 14I, and parcels 14IA, 14IB, and 14IC.[3] Id. at 480–81; see App. at 184 (Baptiste survey map). In a series of conveyances instituted in 1965, title to new Parcel 14I became vested in Meyers, to 14IA in Utah Lindo, to 14IB in George, and to Parcel 14IC in Utah Lindo. Dudley, 7 V.I. at 481. In addition, George and Meyers conveyed a small strip of land to the Government of the Virgin Islands for construction of a new road. Finally, in 1967, Meyers conveyed the new Parcel 14I to Robert L. and Margaret M. Chaney. Id.

In response to these conveyances, in 1967, Dudley, Hoffman, and McGowan brought an action to remove cloud of title on Parcel No. 1 Estate Friise against Meyers, George, Lindo, Robert and Margaret Chaney, and the Government of the Virgin Islands. App. at 119–20. The complaint alleged that the six acre portion of the property lying between the old public road and the sea, described as Parcel No. 14I John's Folly, was in fact part of Parcel No. 1 Estate Friise, as

---

[1] Understanding the issues in this case requires some familiarity with the historical system of land ownership and recording employed in the Virgin Islands.

> In early Danish times the rural parts of the islands of St. Thomas, St. John and St. Croix were divided into large tracts of land for agricultural purposes called "estates." Each estate was given a distinctive name by which it was known and by which ordinarily it was conveyed and otherwise dealt with. In each island numbers of estates were grouped together in insular geographical subdivisions known as "quarters." Many, if not most, of those estates are no longer intact, having been subdivided and resubdivided over the years into smaller and smaller parcels of land. Nonetheless, the use of the original estate name has been almost universally continued to designate the geographical area which it formerly covered and in which the present subdivided parcels of it are situated.

Dudley v. Meyers, 7 V.I. 472, 474 (3d Cir. 1970).

[2] The Wells survey map is attached to this opinion as Attachment 1.

[3] The Baptiste survey map is attached to this opinion as Attachment 2.

144

shown on the 1961 Wells survey map.[4] See id. The Territorial Court denied plaintiffs' claim, finding that the six disputed acres were part of the original Parcel No. 14I Estate John's Folly, not Parcel No. 1 Estate Friise. See App. at 218A-C. The lower court's ruling was subsequently affirmed by the Third Circuit in Dudley v. Meyers, 7 V.I. 472 (3d Cir. 1970). App. at 208–18.

No further dispute arose until the mid 1980s, when plaintiffs, the successors in interest to the Dudley plaintiffs, hired a firm to survey Parcel No. 1 Estate Friise. App. at 85. Plaintiffs contend that prior to the survey, no "No Trespassing" signs were present in the area abutting Estate John's Folly. E.g., Id.; App. at 278, 300, 311. However, on their last visit, the surveyors allegedly found two newly erected signs and some new fencing within the boundaries of Estate Friise. App. at 278–80. The surveyors were also approached by a woman, later identified as Cynthia Miller, who allegedly told them not to return to the property. E.g., App. at 283, 293–94.

In response, plaintiffs retained attorney Maria Hodge to investigate. App. at 309. Hodge's associate, Katherine MacKay, allegedly called Inez Hodge and Les Meyers regarding the incidents. App. at 354. Defendant Hodge allegedly admitted to Attorney MacKay that she had removed the flags and ribbons the surveyors had placed on plaintiffs' property. App. at 361. This action followed.

## II. PROCEDURAL BACKGROUND

In 1980, plaintiffs/appellees, owners of Parcel No. 1 Estate Friise, commenced an action for trespass against defendants/appellants, owners of Parcel No. 14-I Estate John's Folly (including parcels previously subdivided therefrom), seeking damages and injunctive relief. App. at 84–88.

Defendants filed an answer and counterclaim alleging that plaintiffs were trespassing on defendant's property and that the property over which plaintiffs claimed ownership had been adversely possessed by defendants and their predecessors in interest and seeking damages and injunctive relief. App. at 92(a)–96.

---

[4] Parcel No. 1 Estate Friise and Parcel No. 14I Estate John's Folly are adjoining, with the latter property abutting the former on the southwest. Pudley, 7 V.I. at 478. An old coastal road runs through each of the properties in a general southerly direction. Id.

Plaintiffs moved for summary judgment on the basis of res judicata, arguing that the District Court of the Virgin Islands had decided the issue of the boundary line between the two properties in Dudley v. Meyers, St. T. Civ. No. 279-1967 (D.V.I. 1961), aff'd, 7 V.I. 472 (3d Cir. 1970). App. at 48–52.

Defendants filed two motions to disqualify the trial judge based on his legal representation of plaintiffs' predecessor in interest in a dispute over the ownership of Estate Friise in Smith v. 54.9 Acres of Land, St. T. Civ. No. 294-1960 (D.V.I. 1961). App. at 25–27; 30–36.

In an opinion and order dated January 2, 1992, the Territorial Court denied defendants' motion to disqualify the judge. App. at 134–51; 152–54. The court also granted plaintiffs' motion for summary judgment in part, finding that Dudley was res judicata as to the issue of the boundary line between the two properties. Id. On January 28, 1992, the court issued a supplemental opinion clarifying its January 2, 1992 opinion. App. at 155–75.

Five days prior to the scheduled trial date, defendants moved to continue the case alleging, among other facts, that a proposed witness was too ill to testify. App. at 45–47. Defendants further moved for an extension of time to produce maps and surveys. Id. Four days before the trial date, defendants filed a motion to reconsider the opinions of January 2, 1992 and January 28, 1992. App. at 176–77. The court denied all three motions by order dated February 11, 1992. App. at 178–79.

At trial, the court refused to hear evidence or testimony concerning the issue of the boundary line between the two properties, pursuant to its January 2, 1992 order. See, e.g., App. at 379–83.. The court also limited testimony concerning defendants' use and possession of the disputed property to the time period after Dudley. See, e.g., App. at 401–02.

On March 16, 1992, the court entered its opinion and decree, finding that plaintiffs had shown by a preponderance of the evidence that defendants had trespassed on the plaintiffs' property, but that no actual damages had been shown. App. at 9–24. Accordingly, the court awarded plaintiffs nominal damages and permanently enjoined defendants from entering plaintiffs' property. Id.

The court also found that defendants had not shown by a preponderance of the evidence that plaintiffs had trespassed onto defendants' property or that defendants had adversely possessed any of plaintiffs' property, and dismissed both counts of the counterclaim against plaintiffs. Id. This appeal followed.

## III. DISCUSSION[5]

### A. *Res Judicata Effect of Dudley v. Meyers*

Appellants contend that the trial court erroneously granted partial summary judgment to appellees. This court must review de novo the trial court's finding that Dudley v. Meyers was res judicata as to the issue of the boundary between the two properties. See United States v. Athlone Indus., Inc., 746 F.2d 977, 981 (3d Cir. 1984). Furthermore, this court must

> view the facts in the light most favorable to the party against whom judgment is sought and draw all reasonable inferences in favor of the nonmoving party. . . . In order to affirm, [this court] must conclude, as did the [lower] court, that there are no genuine issues of material fact in dispute and that the movant[s are] entitled to judgment as a matter of law."

Id. (citing FED. R. Civ. P. 56).

The purpose behind the doctrine of res judicata is to promote finality, certainty, and judicial efficiency by barring relitigation of issues or claims already decided. See Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988). Res judicata encompasses two independent, but often overlapping, concepts: claim preclusion and issue preclusion. The Supreme Court has distinguished the two concepts, explaining:

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.

---

[5] We note that the poor quality of briefs submitted by the parties has hampered our review of this case. Inadequate and incorrect citations to the record, convoluted writing, poorly-drawn arguments, and scarce citation to authority, characterize appellants' papers. More disturbing is the unwillingness of either counsel to address issues raised by the other, and to inform the court of relevant case law.

Migra v. Warren City School Dist., 465 U.S. 75, 77 n.1 (1984) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)).[6]

■ Although this case involves the failure of a defendant to raise a counterclaim, as opposed to a plaintiff to raise a claim, the same general principles of res judicata apply. See Iron Mountain Security Storage Corp. v. American Specialty Foods, Inc., 457 F. Supp. 1158, 1162 (E.D. Pa. 1978) (compulsory counterclaim non-litigable under principles of res judicata if not asserted as part of initial action). A defendant who fails to assert a compulsory counterclaim is precluded from maintaining an action on the claim once final judgment on the initial claim is entered. See Wells v. Rockefeller, 97 F.R.D. 42, 43–44 (D.V.I.), aff'd in part, rev'd in part, 728 F.2d 209 (3d Cir. 1983); RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(a) (1982).[7] The Territorial Court of the Virgin Islands follows Federal Rule of Civil Procedure 13(a), the compulsory counterclaim rule. See Lindquist v. Quinones, 79 F.R.D. 158, 161 n.4 (D.V.I. 1978). Under Rule 13(a), a claim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." FED. R. Civ. P. 13(a).

■ The central issue confronted by this court is whether appellants' desired claim arises out of the same transaction or occurrence as the subject matter of the earlier action in Dudley. A counterclaim is compulsory in nature if it bears a "logical relationship" to the opposing party's claims. Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961). A logical relation is shown:

---

[6] Although neither the parties nor the trial court distinguished between the two types of preclusion, this case implicates elements of both. Nonetheless, because we find that claim preclusion under the compulsory counterclaim rule applies here, we do not reach the issue of whether issue preclusion applies as well.

[7] The Restatement provides in pertinent part that:

(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court.

RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(a) (1982).

where separate trials on each of [the parties'] respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of res judicata compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.

Id.

■ With these standards and considerations in mind, we find that appellants' claim was compulsory, and was required to have been asserted by appellants' predecessors' in interest in Dudley. Both the plaintiffs' claim in Dudley v. Meyers and appellants' counterclaim involve the same underlying issue—defining the boundary between Parcel No. 1 Estate Friise and Estate John's Folly. As the Third Circuit stated in Dudley, "the real controversy between the parties is not as to ownership of their respective parcels of land, but rather as to the location of the boundary line between them." Dudley, 7 V.I. at 482–83. The same can be said of appellants' counterclaim.

In addition, resolving either claim would require reviewing the same evidence and factual issues, including interpretation of deeds, survey maps, and family histories. More important, both claims would have focused on the Wells survey map.

The fact that both the parties and the court in Dudley were aware of, and relied upon, the Wells survey map compels a finding of res judicata.[8] At oral argument, appellants conceded that their predecessors in interest were fully aware of the boundaries shown on the

---

[8] Appellants concede that the Wells survey map was directly before the court. Appts' Reply Br. at 3 (stating that "[t]he survey that the [Dudley] court was called upon to specifically review was drawn by Nathaniel O. Wells on July 31, 1961 and comprised the southerly portion of the estate which consisted of 27.3 acres more or less, and designated as Parcel No. 1 Estate Friise.")

map.[9] In essence, appellants contend that their predecessors in interest disputed only a portion of the boundary yet "ignored" the other equally obvious boundary. Such a scenario strikes to the heart of the policy justifications behind claim preclusion and the compulsory counterclaim rule.

Throughout the trial and appeal, appellants have vigorously maintained that the Wells survey map was drawn incorrectly.[10] See, e.g., Appts' Br. at 37; Appts' Reply Br. at 5. Even if true, the fact remains that appellants' predecessors in interest saw and relied on the Wells survey map, and thus knew that appellees' predecessors in interest asserted ownership over the area north of the old public road. Despite this knowledge, the defendants in Dudley never disputed plaintiffs' manifest claim. To the contrary, the Dudley defendants specifically limited their claim to land below the public road.[11]

---

[9] In contrast, appellants had asserted previously to this court that their predecessors in interest in Dudley "did not dispute or make a claim as to the boundary above the road as . . . they had no reason to believe that [plaintiffs' predecessors in interest] were claiming an interest to their property." Appts' Reply Br. at 3–4. The record clearly belies this assertion. The Wells survey map was referenced in the pleadings. App. at 119–22. In fact, the parties relied on the map in describing their respective properties. App. at 119, 121.

[10] In its opinion, the Dudley court described the subdivision of the original Parcel 14I Estate John's Folly into 4 parcels, namely, a new Parcel 14I, and Parcels 14IA, 14IB, and 14IC. In arguing against appellees' assertion of issue preclusion, appellants appear to contend that the original Parcel 14I Estate John's Folly had been subdivided into five, rather than four parcels. We are not convinced by the convoluted and unsupported representations of counsel that this "phantom" fifth portion of 14I indeed exists. Therefore, we discount this contention.

[11] Alexander Meyers attested in a sworn affidavit that;

the dividing line between Estates John Folly and Friis, which are adjoining and abutting estates, [was known to him] and part of that line has always run from Almond Rock, in a northwesterly direction, to a hardwood, lignum vitae, boundpost [which had] been there for all of [his] lifetime [and] [t]hat all of the land south and west of this line has been in the possession of myself and my ancestors and family.

App. at 122(a)–(b).

Moreover, the survey map Baptiste prepared in 1965 for the Dudley defendants places the subdivisions of Parcel 14I south of the old public road. App. at 184.

In sum, we find that the claim appellants attempted to assert in this case is logically related to that asserted by appellees' predecessors in interest in Dudley.

Nonetheless, appellants argue that claim preclusion and the compulsory counterclaim rule cannot be asserted against them, because the defendants in Dudley are not the defendants in this case. Appts' Br. at 20. Appellants contend that while the Dudley defendants consisted of six named individuals, the McGowan defendants consist of any individual claiming an interest in Parcel 14I Estate John's Folly. Id. Thus, they argue, the defendants in this case include individuals who were not defendants in Dudley. Id.

■ It is well-established that res judicata does not require complete identity between all parties, but only that the parties were parties or successors to parties in the prior action. See, e.g., RESTATEMENT (SECOND OF JUDGMENTS § 43 (1982).[12] The prior "judgment precludes relitigation not only of claims concerning the property that were actually litigated but also claims that might have been litigated," including compulsory counterclaims. RESTATEMENT (SECOND) OF JUDGMENTS § 43 cmts. a–b (1982).

Appellants provided a list of all persons known to them who claim an interest in Parcel No. 14I. App. at 62–65. Those Persons, as well as the named defendants Cynthia Miller and Inez Mathias Hodge, received their interest in the property from Meyers and George, the named defendants in Dudley. App. at 66. Accordingly, identity of the parties is established by virtue of the privity existing between the Dudley defendants and the defendants in this case.

■ Each of the prerequisites for claim preclusion under the compulsory counterclaim rule have been established. More than

---

[12] The Restatement states:

§ 43. Effect of Judgment Determining Interests in Property on Successors to the Property

A judgment in an action that determines interests in real or personal property:

(1) With respect to the property involved in the action:

(a) Conclusively determines the claim of the parties to the action regarding their interests; and

(b) Has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself.

RESTATEMENT (SECOND) OF JUDGMENTS, § 43.

two decades after Dudley, appellants cannot assert a claim which their predecessors in interest clearly disregarded. Forcing appellants to bear the consequences for their predecessors' action or inaction may seem unfair. But the alternative—forcing appellees to bear those consequences—is more unfair. Accordingly, appellants are precluded from asserting any claims to land located within the bounds of Parcel No. 1 Estate Friise set by the Wells survey, as modified by the court in Dudley.

## B. *Adverse Possession and Trespass Findings*

Appellants contend that the denial of their adverse possession claim and findings of trespass were based on insufficient evidence.[13] See, e.g., Appts' Br. at 33–37; Appts' Reply Br. at 9–10. Unfortunately, the inadequacy of the findings before us precludes review of the judgment below.

Federal Rule of Civil Procedure 52(a) states in pertinent part that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law." FED. R. CIV. P. 52(a).

"Findings of fact must include as much of the subsidiary steps [as is necessary to disclose to the reviewing court] by which the trial court reached its ultimate conclusion on each factual issue." Blue Line Coal Co. v. Eguibank, 769 F. Supp. 891, 896 n.7 (E.D. Pa. 1991) (quoting 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2579, at 710 (1971)).

The trial court must "find the facts on every material issue, including relevant subsidiary issues, and . . . 'state separately' its conclusions thereon with clarity." Kruger v. Purcell, 300 F.2d 830, 831 (3d Cir. 1962) (citations omitted). The findings of fact and conclusions of law must fully inform the appellate court of the bases for the decision. Id.

Where "there is no indication of how the court reached that conclusion or what evidence was considered, and, thus, no basis upon which [an appellate court] can review that conclusion," remand is required. See Scalea v. Scalea's Airport Service, Inc., 833 F.2d 500, 502 (3d Cir. 1987); see also Fehringer v. Bluebeard's Castle, 395 F.2d

---

[13] As presented by appellants, the issue on review is whether sufficient evidence supported the trial court's findings of trespass. Yet their briefs focus on the sufficiency of the evidence supporting their adverse possession claim. Appellants' failure to compartmentalize will not bar review of both issues.

851 (3d Cir. 1968) (remanding case in which inadequate findings of fact precluded "intelligent review").

The findings of fact made by the trial court were wholly inadequate. Despite over three hundred transcript pages, testimony spanning decades, and the existence of hotly contested and complicated factual issues, the trial court devoted only one sentence to the adverse possession claim:

> We find that Defendants have not proved by a preponderance of the evidence that they established and maintained the uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of any part of the Plaintiffs' property, the remainder of Estate Friise No. 1, under color or claim of title for 15 years or more since March 13, 1970, the date of the Opinion of the Court of Appeals for the Third Circuit affirming the decision of the District Court in Dudley et al. vs. Meyers et al., declaring Plaintiffs' predecessors in interest to be the rightful owners of the remainder of Estate Friise No. 1.

App. at 18 (citations omitted). No findings of fact were made by the court to support this conclusion.

The trial court's findings of trespass, while less conclusory, are similarly inadequate.[14] For example, with respect to plaintiffs' trespass claim, the court stated that

> we find that the appearance of the surveyor and his assistant(s) . . . caused the Defendants, who honestly believed that this remainder also was their property, to become very upset, and they and/or persons acting in concert with them harassed the surveying team and warned them not to return to the property to complete their employment for the Plaintiffs. [W]e find, that Defendants and/or persons acting for or in concert with them, again in the honest belief that they were the rightful owners . . . erected a fence about 15 to 30 feet [sic] in the remainder of Estate Friise No. 1 and placed two "No Trespassing" signs on Plaintiffs' property.

App. at 13.

---

[14] Even if the trespass findings met the requirements of Rule 52(a), remand would still be required. The success of the trespass claims is contingent on the outcome of the adverse possession counterclaim. It would be impossible to find that a party trespassed on property which they already adversely possess.

The lower court's opinion utterly fails to indicate the bases for its judgment and thus a review at this point would be based on speculation rather than fact. See Kruger, 300 F.2d at 831. Furthermore, as this court has previously stated:

> Due to the expanding appellate case load of this Court, it has become increasingly important for the trial court to enter concise but comprehensive findings of facts in support of its conclusions of law. While almost every appeal includes a transcript of the proceedings below, as well as briefs of trial counsel, it is the decision of the trial court which must be reviewed. Thus, it is imperative that the trial court clearly state its findings that led to its final decision.

Armstrong v. Armstrong, 1978 v.1 St. X Supp. 55, 56 (D.V.I. Jan. 30, 1978). The need for complete lower court findings is even more dire in a fact-intensive case such as this.

■ Accordingly, we vacate the judgment below and remand for the trial court to enter findings of fact and conclusions of law on the claims of adverse possession and trespass.[15]

C. *Evidentiary Rulings*

Appellants contend that the trial court erred in (1) excluding certain maps and testimony relating to the boundary line between Estate Friise and Estate John's Folly; (2) limiting testimony on the issue of adverse possession to the time period after the Dudley decision; and (3) admitting the testimony and notes of Kathleen MacKay, Esq., an associate with the offices of counsel for appellees. Appts' Br. at 25–33; Appts' Reply Br. at 8–9.

■ Appellants contend that public works drawings and testimony concerning the boundaries between Parcel No. 1 Estate Friise

---

[15] Because the trial court judge who adjudicated this matter has since retired, a new trial must be held. We adopt the view of the Third Circuit, which under similar circumstances stated:

> It is particularly unfortunate that this case cannot now be concluded for the . . . attorneys' fees will continue to mount as this litigation . . . is compelled to proceed. But we are a reviewing court which has been given too little to review and the conclusion of this litigation must await another day.

Scalea, 833 F.2d at 503.

In light of the remand, we need not address whether the trial court abused its discretion in denying the motions for continuance and for judicial disqualification.

and Parcel No. 14I Estate John's Folly were erroneously excluded.[16] Appts' Br. 25–28; Appts' Reply Br. at 8–9. This court has found that the trial court correctly applied res judicata to bar appellants from asserting any claims concerning the boundary lines between the two properties. See II.A. supra. By extension, the trial court correctly excluded evidence concerning that issue.

Reviewing whether the trial court correctly limited testimony concerning adverse possession to the time period after Dudley is less straightforward. On the one hand, evidence concerning appellants' alleged possession and use of the property prior to Dudley would have lent credence to their post-Dudley adverse possession claim.[17] On the other hand, Dudley finally adjudicated the rights of the parties in their respective properties and thus serves as the logical starting point for the running of an adverse possession claim. Moreover, appellants provide no rationale for holding otherwise.

Unfortunately, the trial court never explained the basis for its ruling.[18] Rather than resort to conjecture, we leave this issue to the trial court on remand.

Finally, appellants object to the trial court admitting the testimony of Attorney Katherine MacKay, an associate in the offices of appellee's counsel, concerning MacKay's alleged telephone conversations with Les Meyers and Inez Hodge. Appts' Br. at 31–33.

The Territorial Court of the Virgin Islands has adopted the Code of Professional Responsibility. Rule 303, Rules of the Territorial Court of the Virgin Islands. Rules DR 5-101 and 102 of the Code require a lawyer to refuse employment or withdraw as counsel if the "lawyer learns or it is obvious that he or a lawyer in his firm

---

[16] Appellants also claim summarily that admitting maps prepared by surveyor Charles Hamilton into evidence "almost crippled[ed] the defense," but fail to explain why or how. Appts' Br. at 31. Accordingly, we decline to address this issue.

[17] Despite the ruling, we note that the trial court admitted a significant amount of testimony concerning possession and use of the land by appellants prior to Dudley. See, e.g., App. at 402–04, 421–24, 433–34, 509–12, 521–22.

[18] Appellants, in their statement of standard of review, indicated that the court's ruling was "based on local statutory laws of adverse possession," specifically V.I. CODE ANN. tit. 5, § 31, but provided no citations to the record. Appts' Reply Br. at 1. Furthermore, neither party mentioned section 31, or any other statute, in the body of their briefs. Thus, we can only speculate as to the basis for the trial court's ruling.

ought to be called as a witness on behalf of his client." DR 5-102(A).[19]

An exception does exist, however, where withdrawal "would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." DR 5-101(B)(4).

The Third Circuit has suggested that a test for determining when an attorney "ought to testify" is whether "he has crucial information in his possession which must be divulged." See Universal Athletic Sales Co. v. American Gum, Recreational & Athletic Equip. Corp., 546 F.2d 530, 538–39 n.21 (3d Cir. 1976), cert. denied, 430 U.S. 984 (1977).

Ordinarily, whether the attorney and his client intend for the attorney to testify is irrelevant. See Kalmanovitz v. G. Heileman Brewing Co., 610 F. Supp. 1319, 1325–26 (D. Del 1985); Brotherhood Ry. Carmen v. Delpro, 549 F. Supp. 780, 789 (D. Del. 1982), but see Comm'l Credit Business Loans, Inc. v. Martin, 590 F. Supp. 328, 336 (E.D. Pa. 1984) (denying disqualification where new trial "can be tried in a manner that will not require [attorney] testimony," and party has represented that attorney will not be called as witness); J.D. Pflaumer, Inc. v. United States Dept. of Justice, 465 F. Supp. 746, 748 (E.D. Pa. 1979) (finding that it is "appropriate to leave it to counsel themselves to decide whether they ought to testify"). Instead, the sole inquiry is whether the attorney "ought to testify." Delpro, 549 F. Supp. at 789.

"The mandatory nature of DR 5-102(A) . . . requires that the court be able to disqualify counsel sua sponte when the need arises." Id. at 787, n.16 (quoting MacArthur v. Bank of New York, 524 F. Supp. 1205, 1209 (S.D.N.Y. 1981)). Thus, a trial court must determine whether counsel to a party "ought to testify" under the Code, and if so, whether withdrawal of counsel would be excused under the "substantial hardship exception."

---

[19] The Third Circuit has held that, "while we do not approve of the practice of an attorney testifying . . . for a client of his law firm," a trial court does not err in allowing the testimony. Universal Athletic Sales Co. v. American Gum, Recreational & Athletic Equip. Corp., 546 F.2d 530, 538–39 n.21 (3d Cir. 1976), cert. denied, 430 U.S. 984 (1977). However, its holding was implicitly limited to witnesses whose testimony was dispensable, and thus not violative of the Code. Id.

Because the lower court never went through the relevant analysis, and the matter is being remanded for other reasons, we decline to rule on this issue.[20]

## IV. CONCLUSION

For the reasons set forth above, we (1) affirm the trial court's opinion granting partial summary judgment, and (2) vacate the trial court judgment and remand for findings of fact and conclusions of law on the claims of adverse possession and trespass. An appropriate order will be entered.

## ORDER OF THE COURT

AND NOW, this 23 day of December, 1993, after careful review of the record and having considered the submissions of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

IT IS ORDERED:

THAT the Territorial Court's decision is AFFIRMED in part and REVERSED in part, and the matter is REMANDED for further proceedings consistent with this Court's Opinion of even date.

---

[20] Appellants also object to the trial court receiving into evidence the notes Attorney MacKay made after her telephone conversations with Meyers and Hodge. Appellants argue correctly that these notes could only be used to refresh the witness' testimony.

Federal Rule of Evidence 803(5) provides that

[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to testify fully and accurately, shown to have been made . . . by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly [may be admitted into evidence]. If admitted, the memorandum or record may be *read* into evidence but may *not itself be received as an exhibit* unless offered by an adverse party.

FED. R. EVID. 803(5) (emphasis added).