**INEZ MATHIAS HODGE and CYNTHIA MILLER,**
**Appellants/Defendants**

**v.**

**GLORIA McGOWAN, PAUL HOFFMAN, and JANE HOFFMAN**
**WALKER, Appellees/Plaintiffs**

S. Ct. Civ. No. 2007-057

Supreme Court of the Virgin Islands

November 10, 2008

297

298

HERBERT MURIEL, ESQ. (Argued), St. Thomas, USVI; ARCHIE JENNINGS, ESQ., St. Thomas, USVI, *Attorneys for Appellants*.

MARIA TANKENSON HODGE, ESQ., Hodge & Francois, St. Thomas, USVI, *Attorney for Appellees*.

CARROLL III, *Justice Pro Tem*; ROSS, *Justice Pro Tem*; and DUNSTON, *Justice Pro Tem*.[1]

## OPINION OF THE COURT

(November 10, 2008)

PER CURIAM. Cynthia Miller (hereafter "Miller") appeals the March 12, 2007 Superior Court order that: dismissed the claims of Inez Mathias Hodge (hereafter "Hodge") against Gloria McGowan, Paul Hoffman and Jane Hoffman Walker (collectively referred to as "Appellees") for failure to prosecute; dismissed with prejudice Miller's claims against Appellees; dismissed with prejudice Appellees' claims against Miller; and dismissed as moot Appellees' claims against Hodge.[2] For the reasons which follow, we will affirm the Superior Court's holdings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The present appeal stems from a protracted dispute over land located on St. John which has spanned nearly fifty years. Much of the complex factual and procedural history of this case was succinctly stated in *Hodge v. McGowan*, 29 V.I. 142, 143-46 (D.V.I. App. Div. 1993):

> The origins of this boundary dispute date back to the 1960's. In 1960, Lucy Smith, executrix of the Estate of Fritz Allen Smith, brought an

---

[1] Chief Justice Rhys S. Hodge, Associate Justice Maria M. Cabret, and Associate Justice Ive Arlington Swan are recused from this matter. Judges Carroll and Dunston, sitting judges of the Superior Court of the Virgin Islands, and Judge Ross, a retired judge of the Superior Court of the Virgin Islands, sit in their place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

[2] Although this case was captioned on appeal as Inez Mathias Hodge and Cynthia Miller comprising the Appellants/Defendants, the notice of appeal filed with this Court indicates that only Miller appeals the trial court order. Nevertheless, for consistency, we will refer to Hodge and Miller collectively as Appellants when discussing the proceedings below and any matters relating generally to them both. Because only Miller filed a notice of appeal, however, we will refer only to Miller when discussing the issues before us on appeal.

action to quiet title against all persons owning or claiming an interest in 54.9 acres of Estate Friise in *Smith v. 54.9 Acres of Land*, St. T. Civ. No. 294-1960 (D.V.I.1961), based on a survey performed by N.O. Wells on December 16, 1960. Cynthia Miller, on behalf of her aunt and uncle, was the only defendant to appear. [*Id.*] at 477. Neither Miller nor the other defendants filed answers or any other pleadings in the case. *Id.* The court entered a default judgment quieting title to Estate Friise, as described in the complaint and Wells survey, in favor of Lucy Smith in August 1961 [*See id.*]

On July 31, 1961, N.O. Wells surveyed a proposed 27.3 acre subdivision of Estate Friise denominated as "Parcel No. 1 Estate Friise." [*Id.* at 477-78.] In November 1961, Lucy Smith subsequently conveyed Parcel No. 1 Estate Friise to George Dudley, Louis Hoffman and Joseph McGowan, the predecessors in interest to the [appellees] in this case. [*Id.*]

In February 1964, Alexander Meyers and Eliza George, the predecessors in interest to the [appellants] in this case, successfully sued to quiet title in Parcel No. 14I Estate Johns Folly. *Id.* at 480. On July 19, 1965, Sydney Baptiste surveyed four proposed subdivisions of Parcel No. 14I Estate Johns Folly: a new Parcel 14I, and parcels 14IA, 14IB, and 14IC. *Id.* at 480-81. In a series of conveyances instituted in 1965, title to new Parcel 14I became vested in Meyers, to 14IA in Utah Lindo, to 14IB in George, and to Parcel 14IC in Utah Lindo. [*Id.*] at 481. In addition, George and Meyers conveyed a small strip of land to the Government of the Virgin Islands for construction of a new road. Finally, in 1967, Meyers conveyed the new Parcel 14I to Robert L. and Margaret M. Chaney. *Id.*

In response to these conveyances, in 1967, Dudley, Hoffman, and McGowan commenced action to remove cloud of title on Parcel No. 1 Estate Friise against Meyers, George, Lindo, Robert and Margaret Chaney, and the Government of the Virgin Islands. The complaint alleged that the six acre portion of the property lying between the old public road and the sea, described as Parcel No. 14I John's Folly, was in fact part of Parcel No. 1 Estate Friise, as shown on the 1961 Wells survey map. *See id.* The Territorial [now Superior] Court denied their claim, finding that the six disputed acres were part of the original Parcel No. 14I Estate John's Folly, not Parcel No. 1 Estate Friise. The

lower court's ruling was subsequently affirmed by the Third Circuit in *Dudley v. Meyers*, 422 F.2d 1389, 7 V.I. 472 (3d Cir. 1970).

No further dispute arose until the mid 1980s, when current [Appellees], the successors in interest to the *Dudley* plaintiffs, hired a firm to survey Parcel No. 1 Estate Friise. They contend that prior to the survey, no "No Trespassing" signs were present in the area abutting Estate John's Folly. *E.g., Id.* However, on their last visit, the surveyors allegedly found two newly erected signs and some new fencing within the boundaries of Estate Friise. The surveyors were also approached by a woman, later identified as Cynthia Miller, who allegedly told them not to return to the property.

In response, [Appellees] retained attorney Maria Hodge to investigate. Hodge's associate, Katherine Mackay, allegedly called Inez Hodge and Les Meyers regarding the incidents. [Appellant] Hodge allegedly admitted to Attorney Mackay that she had removed the flags and ribbons the surveyors had placed on [Appellees'] property. . . .

In 1980, [Appellees], owners of Parcel No. 1 Estate Friise, commenced an action for trespass against [Appellants], owners of Parcel No. 14I Estate John's Folly (including parcels previously subdivided therefrom), seeking damages and injunctive relief.

[Appellants] filed an answer and counterclaim alleging that [Appellees] were trespassing on [Appellants'] property and that the property over which [Appellees] claimed ownership had been adversely possessed by [Appellants] and their predecessors in interest and seeking damages and injunctive relief.

[Appellees] moved for summary judgment on the basis of *res judicata*, arguing that the District Court of the Virgin Islands had decided the issue of the boundary line between the two properties in *Dudley v. Meyers*, St. T. Civ. No. 279-1967 (D.V.I.1961), *aff'd*, 422 F.2d 1389, 7 V.I. 472 (3d Cir.1970).

[Appellants] filed two motions to disqualify the trial judge based on his legal representation of [Appellees'] predecessor in interest in a dispute over the ownership of Estate Friise in *Smith*.

In an opinion and order dated January 2, 1992, the Territorial [now Superior] Court denied [Appellants'] motion to disqualify the judge.

The court also granted [Appellees'] motion for summary judgment in part, finding that *Dudley* was *res judicata* as to the issue of the boundary line between the two properties. *Id.* On January 28, 1992, the court issued a supplemental opinion clarifying its January 2, 1992 opinion.

Five days prior to the scheduled trial date, [Appellants] moved to continue the case alleging, among other facts, that a proposed witness was too ill to testify. [Appellants] further moved for an extension of time to produce maps and surveys. Four days before the trial date, [Appellants] filed a motion to reconsider the opinions of January 2, 1992 and January 28, 1992. The court denied all three motions by order dated February 11, 1992.

At [the first] trial, the court refused to hear evidence or testimony concerning the issue of the boundary line between the two properties, pursuant to its January 2, 1992 order. The court also limited testimony concerning [Appellants'] use and possession of the disputed property to the time period after *Dudley*.

On March 16, 1992, the court entered its opinion and decree, finding that [Appellees] had shown by a preponderance of the evidence that [Appellants] had trespassed on [Appellees'] property, but that no actual damages had been shown. Accordingly, the court awarded [Appellees] nominal damages and permanently enjoined [Appellants] from entering [Appellees'] property.

The court [at the first trial] also found that Appellants had not shown by a preponderance of the evidence that [Appellees] had trespassed onto [Appellants'] property or that [Appellants] had adversely possessed any of [Appellees'] property, and dismissed both counts of the counterclaim against [Appellees].

(Brotman, J.) (footnotes and internal citations to the record omitted).

Appellants thereafter appealed the decision of the first trial judge to the Appellate Division of the District Court. *See id.* Reasoning that Appellants' claim was logically related to the claim asserted by Appellants' predecessors in interest in *Dudley*, the Appellate Division held that Appellants were precluded under the doctrine of *res judicata* from asserting any claims to "land located within the bounds of Parcel No. 1 Estate Friise set by the Wells survey, as modified by the court in

*Dudley.*" *Id.* at 152. Accordingly, after a *de novo* review, the Appellate Division affirmed the first trial judge's grant of partial summary judgment on the issue of the boundary between the two properties, but vacated and remanded for findings of fact and conclusions of law on the claims of adverse possession and trespass, because the lack of adequate findings made appellate review impractical. *Id.* at 157. In a footnote, the court stated that a new trial must be held. *Id.* at 154 n. 15. With respect to Appellants' adverse possession claim, the Appellate Division also stated that:

> Reviewing whether the trial court correctly limited testimony concerning adverse possession to the time period after *Dudley* is less straightforward. On the one hand, evidence concerning appellants' alleged possession and use of the property prior to *Dudley* would have lent credence to their post-*Dudley* adverse possession claim. On the other hand, *Dudley* finally adjudicated the rights of the parties in their respective properties and thus serves as the logical starting point for the running of an adverse possession claim. Moreover, appellants provide no rationale for holding otherwise. Unfortunately, the trial court never explained the basis for its ruling. Rather than resort to conjecture, we leave this issue to the trial court on remand.

*Id.* at 155. The Appellate Division further indicated that, in light of the remand, it need not address whether the trial judge abused his discretion in denying Appellants' motion for judicial disqualification. *Id.* at 154 n. 15.

On remand, a second trial judge[3] certified his familiarity with the record based on the transcripts of the testimony from the first trial, rather than holding a new trial on the issues of trespass and adverse possession. *See McGowan v. Hodge*, Civil No. 84/1988, 2003 V.I. LEXIS 20 (V.I. Super. July 31, 2003). The trial judge concluded that Appellants had not adversely possessed Appellees' land and therefore had committed trespass upon Appellees' land. Subsequently, Appellants appealed the second trial court order to the Appellate Division, contending that the trial judge had erred in not conducting a new trial. The Appellate Division vacated the trial court order and remanded for a second time with instructions that a new trial must be conducted on the issues of adverse possession and trespass. *See Hodge v. McGowan*, 48 V.I. 413, 417 (D.V.I. App. Div. 2006).

On the second remand, a third trial judge held a new trial on Appellants' claims of adverse possession and both parties' claims of

---

303

[3] In 2001, a new trial judge was assigned to the case on remand, because the first trial judge had since retired. *See Hodge*, 29 V.I. at 154 n. 15.

trespass. In an order entered on March 12, 2007, the trial court held that Hodge's claims against Appellees were dismissed with prejudice for failure to prosecute, because the record indicated that Hodge had died more than ten years before trial and no effort had been made to substitute her estate or heirs as parties to the case. As a consequence, the court dismissed Appellees' claims against Hodge as moot. Additionally, Appellees' trespass claim against Miller was dismissed with prejudice because there was no evidence establishing who posted the "No Trespassing" signs on the property. The judge also dismissed with prejudice Miller's claims of adverse possession and trespass against Appellees. Specifically, the judge held that Miller failed to offer, by clear and convincing evidence, acts taking place between 1970 and 1988 which establish the elements required for an adverse possession claim. Therefore, having failed to demonstrate title to the land in question, Miller could not prove her trespass claim. Finally, the trial court denied Appellants' pretrial motion to vacate the three orders entered by the first trial judge. In particular, the court stated that of the three rulings made in those orders, one was affirmed after a *de novo* review by the Appellate Division and Appellants were granted a new trial as to the other two.

On April 12, 2007, a notice of appeal was filed with this Court.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court . . . ."[4] V.I. CODE ANN. tit. 4 § 32(a) (1997). Because the order appealed herein was entered on March 12, 2007 and the notice of appeal

---

[4] Although the issue was not raised by the parties, it is important that we clarify the propriety of this Court's jurisdiction given the previous multiple appeals of this matter to the Appellate Division of the District Court. Section 23A of the Revised Organic Act of 1954 provides:

Upon the establishment of the appellate court provided for in section 21(a) of this Act all appeals from the decisions of the courts of the Virgin Islands established by local law not previously taken must be taken to that appellate court. The establishment of the appellate court shall not result in the loss of jurisdiction of the district court over any appeal then pending in it. The rulings of the district court on such appeals may be reviewed in the United States Court of Appeals for the Third Circuit and in the Supreme Court notwithstanding the establishment of the appellate court.

was filed on April 12, 2007, this appeal was timely filed. *See* V.I. S. Ct. R. 5(a)(1) ("the notice of appeal [in a civil case] required by Rule 4 shall be filed with the Clerk of the Superior Court within thirty days after the date of entry of the judgment or order appealed from . . .").

Our review of the Superior Court's application of law is plenary. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Findings of fact, however, are reviewed only for clear error. *Id.* "[We] must accept the factual determination of the fact finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Id.* Finally, we review the trial court's decisions regarding admissibility of evidence and substitution of a party after death only for abuse of discretion. *Corriette v. Morales*, No. 2007-075, 2008 V.I. Supreme LEXIS 13, *5 (July 14, 2008) (abuse of discretion standard for admissibility of evidence); *McKenna v. Pac. R. Serv.*, 32 F.3d 820, 836 (3d Cir. 1994) (abuse of discretion standard for

---

The Revised Organic Act of 1954, § 23A(d), 48 U.S.C. § 1613a, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 160 (1995) (preceding V.I. CODE ANN. tit. 1).

As stated above, this case was twice remanded by the Appellate Division in 1993 and 2006. In asserting our jurisdiction, we must consider the manner in which the Appellate Division remanded the case to the trial court. An appellate court may remand the "record" or it may remand the "case;" importantly, the two types of remand affect the appellate court's jurisdiction differently. *See Bell v. U.S.*, 676 A.2d 37, 41 (D.C. 1996).

> In a record remand, [an appellate] court retains jurisdiction over the case, *i.e.*, jurisdiction over the case remains with [the] court, but the record is returned to the trial court. In those circumstances, the trial court may be directed to clarify or amplify some portion of the record, to make additional findings, to hear further testimony, or to explain a ruling. The point of such a remand is to give the trial judge the opportunity to complete or clarify the record so that this court will have an adequate basis for review of the trial court's rulings. The trial court does not, however, have the authority to amend the ruling that is on appeal. . . . A "case" remand, on the other hand, returns the case to the trial court for all purposes. [The appellate] court retains no jurisdiction over the case and the appeal is terminated. If, after a case remand, a party is dissatisfied with the action of the trial court, the only course available to obtain review in [the appellate] court, is to file a new notice of appeal, once a final order or judgment is entered. That appeal is a new appeal, separate from the previous appeal that was terminated when the case was remanded.

*Id.* (internal footnotes and citations omitted). In this case, the Appellate Division remanded *the case* for a new trial; it did not remand merely for clarification of the record. Accordingly, jurisdiction in this Court is proper.

substitution of party after death) (construing Federal Rule of Civil Procedure 25(a)(1)).

## B. There Was No Rule 52(c) Reversible Error

After Appellees rested their case, Appellants moved for a judgment on partial findings with respect to Appellees' trespass claim, pursuant to Federal Rule of Civil Procedure 52(c).[5] As the rule permits, however, the trial judge reserved ruling upon the motion and directed Miller to proceed with her evidence. Miller argues that the trial court committed reversible error in failing to make findings of fact and conclusions of law in accordance with Rule 52(c).

The Restatement (Second) of Torts states that a plaintiff claiming trespass has the burden of proving that the defendant "intentionally (a) enter[ed] land in the possession of the other, or cause[d] a thing or a third person to do so, or (b) remain[ed] on the land, or (c) fail[ed] to remove from the land a thing which he [was under a duty to remove." RESTATEMENT (SECOND) OF TORTS § 158 (1965). In this case, the trial court found that Appellees failed to prove that Miller placed the "No Trespassing" signs on the property in question and, accordingly, held that they had not proved their trespass claim. Nevertheless, Miller contends that the trial court erred in failing to make a finding a fact regarding ownership of the land upon which Appellees claimed Miller trespassed. However, a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Hence, the trial court was not required to make a finding as to the ownership of the land when it ruled upon Appellees' trespass claim because it found that Appellees failed to show that it was

---

[5] Federal Rule of Civil Procedure 52(c), which is applicable in the Superior Court of the Virgin Islands pursuant to Superior Court Rule 7, reads:

Judgment on Partial Findings. If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Miller who entered the land and put up "No Trespassing" signs.[6] Accordingly, the trial court did not commit reversible error.

## C. The Trial Court Did Not Err in Dismissing Hodge's Claims Before Expiration of Rule 25(a)(1)'s 90-Day Waiting Period

Miller argues that the trial court erred in dismissing Hodge's claims for failure to prosecute. The record indicates that Hodge died on August 26, 1996, yet no suggestion of death was filed on her behalf until February 9, 2007, more than ten years after her death. At trial, on February 26, 2007, counsel for Miller stated that their agency relationship with Hodge had terminated at her death, and they suggested that the case should not proceed until there is a substitution of parties. The trial court ultimately dismissed Hodge's claims because no effort had been made to substitute her estate or heirs during the ten years since her death.

On appeal, Miller contends that Federal Rule of Civil Procedure 25(a)(1) precludes a dismissal for ninety days following the filing of a suggestion of death. The rule states:

> *Substitution if the Claim Is Not Extinguished.* If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

FED. R. CIV. P. 25(a)(1).

Virgin Islands law clearly provides, however, that:

> No action shall abate by the death or disability of a party or by the transfer of any interest therein, if the cause of action survives or continues. In case of the death or disability of a party, the court may *at any time within two years thereafter*, on motion, allow the action to be continued by or against his personal representatives or successor in interest.

5 V.I.C. § 78. (emphasis added).

---

[6] We note that Miller's claim of error is peculiar in light of the fact that she ultimately prevailed on Appellees' trespass claim.

■ Therefore, the substitution of a deceased party must occur within two years of death. As stated above, Hodge's death was not suggested on the record until more than ten years after her death[7], and at no time has the required motion for substitution been filed with the trial court. Furthermore, the statute clearly states that a court has the discretion to deny a motion to substitute even when timely made within two years following death.

■ ■ Moreover, even if Federal Rule of Civil Procedure 25(a)(1) governed, the rule's language plainly allows a trial court to deny a motion for substitution even when promptly made within ninety days of suggestion of death. As the advisory committee's notes indicate, "[a] motion to substitute made within the prescribed time will ordinarily be granted, but under the permissive language of the first sentence of the amended rule ('the court may order') it may be denied by the court in the exercise of a sound discretion if made long after the death — as can occur if the suggestion of death is not made or is delayed — and circumstances have arisen rendering it unfair to allow substitution." FED. R. CIV. P. 25 advisory committee's note to 1963 amendments. "Accordingly, a party interested in securing substitution under the amended rule should not assume that he can rest indefinitely awaiting the suggestion of death before he makes his motion to substitute." *Id.* In this case, the ten-year delay in filing a suggestion of death and the long, protracted history of these proceedings could certainly be considered circumstances that would make it unfair to allow substitution even if a motion for substitution had been timely filed.

Accordingly, the trial court did not abuse its discretion in dismissing Hodge's claim because a motion for substitution was not brought within the statutory two-year period.

---

[7] In her brief, Miller states that "[c]onfusion regarding [Hodge's] representation caused [a] delay in filing a suggestion of death." (Appellants' Br. 11.) It is apparent from the docket, however, that, for years after Hodge's death, Miller's counsel filed appearances, motions, and appeals on her behalf, thereby undermining this excuse tendered by Miller.

## D. The Trial Court Adequately Addressed the Rule 60(b)(6) Motion

██ Miller also contends that the trial court inadequately addressed her Rule 60(b)(6)[8] motion to vacate the January 2, 1992, January 28, 1992 and February 11, 1992 orders of the first trial judge, Judge Alphonso Christian, on the grounds that Judge Christian failed to disqualify himself. In his January 2, 1992 order, Judge Christian denied Miller's motion to disqualify because, although he found privity of parties, he did not find sufficient sameness of the issues litigated in the 1960 action and the current action filed in 1988. On appeal, the Appellate Division stated that, because it was remanding for a new trial on the adverse possession and trespass issues, it need not address whether the trial judge abused his discretion in denying Appellants' motion for judicial disqualification. *Hodge*, 29 V.I. at 155 n. 16. On remand, the third trial judge denied Miller's motion to vacate Judge Christian's three orders, indicating that a new trial was had on the issues addressed in the orders and that the Appellate Division, after a *de novo* review, affirmed Judge Christian's grant of partial summary judgment in the other challenged order.

Miller argues that none of the previous courts have directly addressed the issue of whether Judge Christian should have recused himself. Although our subsequent analysis ultimately makes it unnecessary, we will address the merits of Miller's contention that the judge should have disqualified himself in order to preclude future litigation on this issue.

The record indicates that Judge Christian represented the plaintiffs in the previous 1960 quiet title action in which Miller appeared as a defendant. *See Smith v. 54.9 Acres of Land*, Civ. No. 294-1960 (D.V.I. 1961). In 1961, Lucy Smith, a plaintiff in the quiet title action, conveyed

---

[8] Federal Rule of Civil Procedure 60(b) provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (6) any other reason that justifies relief." Rule 60(b)(6)'s "catch-all" category is reserved for extraordinary circumstances. *See Gonzalez v. Crosby*, 545 U.S. 524, 535, 125 S. Ct. 2641, 2649, 162 L. Ed. 2d 480 (2005). The United States Supreme Court has held that the failure of a judge to recuse himself *may* warrant relief under Rule 60(b)(6). *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863, 108 S. Ct. 2194, 2204-05, 100 L. Ed. 2d 855 (1988) ("Rule 60(b)(6) relief is accordingly neither categorically available nor categorically unavailable for all [violations of the recusal statute]. We conclude that in determining whether a judgment should be vacated for a violation [of the recusal statute], it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.").

Parcel No. 1 Estate Friise to George Dudley, Louis Hoffman and Joseph McGowan, who are the predecessors in interest to Appellees in this action. Title 4, section 284(3) of the Virgin Islands Code provides that no judge shall sit in any action or proceeding "[w]hen in the action or proceeding or in any prior action or proceeding involving the same issues, he has been of counsel for any party to the action or proceeding."

■ In analyzing his recusal under section 284(3), Judge Christian correctly determined that there was privity among the parties to the two actions. *See* BLACK'S LAW DICTIONARY 1238 (8th ed. 2004) ("privity of estate" is defined as "[a] mutual or successive relationship to the same right in property, *as between grantor and grantee* or landlord and tenant" (emphasis added)). He determined, however, that he need not recuse himself because there was no sameness of issues in the two actions. Specifically, he stated:

> Surely, the only issue in the 1960 action was who owned the 54.9 acres described as Estate Friise, No. 13 Coral Bay Quarter. There was absolutely no issue of the correct boundary line between Estate Friise No. 1 and John's Folly No. 14I in that prior action. This issue did not arise until the 1967 Dudley case . . . .

*McGowan v. Hodge*, 27 V.I. 16, 23 (V.I. Super. 1992).

■ In this jurisdiction, case law as to the disqualification of a judge under subsection 3 of the disqualification statute is lacking. Perhaps, the reason for this lack of case law stems from the common sense notion that a judge who has previously represented a party, or its predecessor in interest, in a matter relating to the same basic subject matter should disqualify himself from hearing the new case. In this case, it appears that Judge Christian narrowly defined the issues and found a firm distinction between the claim of ownership in the first action and the dispute about a boundary line in the second action. Ultimately, however, a portion of the land to which Judge Christian helped Appellees' predecessors in interest quiet title is involved in the second action. Therefore, there was a factual nexus between Judge Christian's prior representation of Appellees' predecessors in interest and the issues that were before him as a judge. Accordingly, he should have disqualified himself from hearing the instant action.

Despite our conclusion that Judge Christian should have disqualified himself, an order vacating the judge's three rulings was not warranted in

this case. In denying Appellants' motion to vacate, the third trial judge stated that Judge Christian's grant of partial summary was affirmed after *de novo* review while the two remaining issues of trespass and adverse possession were given new trials.

On appeal, Miller argues that the Appellate Division's holding that Judge Christian was correct on the partial summary judgment issue does not cure the need for disqualification. It is not whether Judge Christian's decision was correct, however, that is relevant to our review of this issue. Rather, it is the Appellate Division's examination of the grant of partial summary judgment under a *de novo* standard of review which we find compelling. Under a *de novo* standard, an appellate court "uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings." BLACK'S LAW DICTIONARY 106 (8th ed. 2004). Therefore, Miller received an independent examination of Appellees' motion for partial summary judgment. According to the United States Supreme Court, when determining whether an order should be vacated for violation of the disqualification statute, "it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 863, 108 S. Ct. at 2204-05 (construing the federal disqualification statute). Since Miller received a new, clearly impartial determination of the summary judgment issue on appeal to the Appellate Division, she received the same consideration she would receive if Judge Christian's order was vacated and remanded for a new trial on the motion for partial summary judgment. Accordingly, no risk of current or future injustice to the parties stems from the trial court's refusal to vacate Judge Christian's partial summary judgment order, nor is the public's confidence in the judicial process undermined.

Additionally, the other issues addressed by Judge Christian, adverse possession and trespass, similarly received independent review by a new judge. Specifically, on remand from the Appellate Division to the Superior Court, a new trial was held on both issues. Therefore, as with the partial summary judgment issue, there is no risk that the parties will suffer injustice or that the public's confidence will be undermined.

To the extent that Judge Christian's refusal to disqualify himself constituted error, the independent determination Miller received on all three issues decided by Judge Christian obliges us to conclude that such

error was harmless. *See Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 114 Nev. 823, 963 P.2d 465, 479 (1998); *McNair v. McNair*, 151 N.H. 343, 856 A.2d 5, 17 (2004). Accordingly, the trial court did not err in denying Appellants' motion to vacate Judge Christian's three orders.

## E. The Trial Court Did Not Err in Dismissing Miller's Adverse Possession Claim

Miller argues that the trial court erred in dismissing her claim of adverse possession. Specifically, she contends that the court should have considered evidence of pre-1970 acts offered to establish adverse possession and that the totality of the evidence presented proves her claim.

### 1. The Trial Court Was Limited to Post-Dudley Evidence

On appeal of Judge Christian's grant of partial summary judgment, the Appellate Division reviewed *de novo* the trial court's finding that *Dudley* was *res judicata* as to the issue of the boundary line between Estate Friise and Estate John's Folly. The court found that Appellants' adverse possession counterclaim was compulsory and was required to be raised by the plaintiffs in *Dudley* (Appellants' predecessors in interest) when they disputed therein a portion of the boundary line between the two properties. Consequently, the court held that Appellants are barred under the doctrine of *res judicata* from now asserting any claim concerning the boundary lines between the properties. Concerning Judge Christian's ruling which limited the evidence establishing adverse possession to acts occurring after 1970, the Appellate Division stated:

> Reviewing whether the trial court correctly limited testimony concerning adverse possession to the time period after *Dudley* is less straightforward. On the one hand, evidence concerning appellants' alleged possession and use of the property prior to *Dudley* would have lent credence to their *post-Dudley* adverse possession claim. On the other hand, *Dudley* finally adjudicated the rights of the parties in their respective properties and thus serves as the logical starting point for the running of an adverse possession claim. Moreover, appellants provide no rationale for holding otherwise.

> Unfortunately, the trial court never explained the basis for its ruling. Rather than resort to conjecture, we leave this issue to the trial court on remand.

*Hodge*, 29 V.I. at 155.

On remand, the trial court limited Miller's evidence to acts occurring after 1970, reasoning that:

> In this case, Cynthia Miller was faced with an additional hurdle: as was made clear in the Appellate Division's 1993 Opinion, the case of *Dudley v. Meyers*, 7 V.I. 472, 422 F.2d 1389 (3d Cir. 1970), involving the predecessors in interest of Defendants, was *res judicata* with respect to any claims of adverse possession by Defendants involving acts occurring before 1970. Thus, the clear and convincing evidence which she would need to present to prevail would have been evidence of acts taking place in a time frame of just under 18 years, between 1970 and the filing of this action in 1988.

*McGowan v. Hodge*, Civil No. 84/1988, at 4-5 (V.I. Super. Mar. 12, 2007).

On appeal to this Court, Miller argues that the trial court erred in limiting the evidence to acts occurring after 1970. Miller essentially reasons that the *Dudley* court barred Appellants under the *res judicata* doctrine from re-litigating the location of the boundary line but not from litigating the present issue concerning which party holds title to the property on either side of the boundary line.

It appears, however, that Miller overlooks the importance of the Appellate Division's clear assertion that "*Dudley* finally adjudicated the rights of the parties in their respective properties and thus serves as the logical starting point for the running of an adverse possession claim." *Hodge*, 29 V.I. at 155. As the Appellate Division noted, Appellants' predecessors in interest saw and relied upon the Wells survey map, which indicated that Appellees' predecessors in interest asserted ownership over the area north of the old public road. Nevertheless, Appellants' predecessors chose not to dispute ownership of that area, instead disputing ownership only to the six acres below the old public road. Thus, as the Appellate Division clearly recognized, the *Dudley* court's decision setting the boundary line indirectly determined the parties' ownership of the properties on either side of the boundary line. It is for this reason that the trial court held, on remand, that only acts subsequent to 1970, the year in which *Dudley* was decided, would be admitted as evidence of adverse possession.

■ In general,

> Possession by the adverse claimant must be uninterrupted for the full statutory period, for to break effectively the possession at any time before the period has fully expired will arrest the running of the statute. The moment the running of the statute of limitations is interrupted the law restores the possession to the holder of the legal title, and the claimant by adverse possession must begin *de novo*. Upon interruption of the possession before completion of the statutory period, the possession of the true owner constructively intervenes, and *should the claimant resume possession, the statute of limitations begins to run at the date of such resumption, and must run for the full statutory period thereafter in order to give the claimant title.*

*Rosencrantz v. Shields, Inc.*, 28 Md. App. 379, 346 A.2d 237, 245-46 (Md. App. 1975) (internal quotations omitted) (emphasis added).

■ As was aptly stated in *DeCastro v. Stuart*, 45 V.I. 591, 597-98 (D.V.I. App. 2004), a judicial decree against a land occupier stops the running of the statutory adverse possession period and resets the statutory clock. *See also Matthews v. Citizens' Bank of Senath*, 329 Mo. 556, 46 S.W.2d 161, 163-64 (1932) ("It is the law in this state that a judgment in ejectment which determines the title and right of possession in plaintiff's favor in and of itself, without the issuance of any writ or disturbance of the defendant's actual possession, changes the character of such possession from being adverse, for the time being at least, and stops the running of the statute of limitations at that point [in] time."); 3 AM. JUR. 2D *Adverse Possession* § 91 (1972) ("Where, in an action involving the title to land, one of the parties claims title by adverse possession, an adverse judgment . . . breaks the continuity of his possession, and though he thereafter remains in possession of the land he is estopped by the judgment from claiming title to the land so long as the judgment remains in effect.").

Notably, a party claiming adverse possession may thereafter acquire legal title upon the running of a new, complete statutory period following entry of the adverse judicial decree. *See, e.g., DeCastro*, 45 V.I. at 598; *Hodgkins v. People's Water Co.*, 177 Cal. 730, 171 P. 945, 945 (1918) ("This does not mean that such title cannot be acquired . . . by an adverse possession initiated after the entry of the judgment."); *Power v. Jones*, 135 S.W.2d 1054, 1055 (Tex. App. 1940) ("[T]he fact that the defendant in the instant cause once recovered a judgment for title and possession of

this land against the [plaintiff] would not preclude the plaintiff's right of recovery in this suit on the ground of limitation title maturing subsequent to the date of that judgment.").

■ To the extent that Miller may have performed acts of adverse possession prior to 1970, the decision in *Dudley*, which was adverse to Miller, stopped the running of the statutory period. Therefore, Miller may reassert her claim of title pursuant to the adverse possession statute only if she can establish sufficient acts *occurring after 1970* which meet the elements required for such a claim. Accordingly, we conclude that the trial court did not abuse its discretion in limiting Miller's case to evidence of *post-Dudley* acts of adverse possession.

### 2. *The Trial Court's Fact-finding Was Not Clearly Erroneous*

Miller also argues that the trial court erroneously found that the evidence offered by her failed to sufficiently establish an adverse possession claim. As discussed above, the trial court properly stated that Miller could not make out a claim for adverse possession unless she offered sufficient evidence of acts of adverse possession between 1970 and 1988, the year in which the instant action was instituted.[9] We note, however, that despite formally precluding evidence of pre-*Dudley* acts, it is evident from the record that the trial court nevertheless considered several pieces of pre-1970 evidence, including the existence of graves and ruins on the disputed land.·

■ Title 28, section 11 of the Virgin Islands Code defines adverse possession as "[t]he uninterrupted, exclusive, actual, physical adverse, continuous, notorious possession of real property under claim or color of title for 15 years or more . . . ." In addition, the claimant's possession must be hostile to the whole world, *i.e.* she must perform acts on the land which customarily only an owner would perform. *Netsky v. Sewer*, 205 F. Supp. 2d. 443, 460 (D.V.I. 2002). In the Virgin Islands, it is the duty of the trier of fact to determine whether the claimant has met his burden of proving the required elements by clear and convincing evidence. *Id.* at 459.

---

[9] As one of the bases for her argument that the trial court erred in its fact-finding, Miller again contends that the trial court should have considered pre-1970 acts of adverse possession. Because we have already sufficiently discussed and ruled on this issue *supra*, we need not address it here.

The record before us indicates, and the trial court aptly noted, that the evidence offered by Miller was often confusing and vague. The trial court considered evidence of the location of Miller's home, activities such as charcoal burning, bush clearing and weaving, the existence of fencing, the grazing of goats, and even the existence of pre-1970 ancestral graves and ruins. As to Miller's home, the court found that it was never clearly established where it was located or that she was offering the home's location in support of her claim. As to the various activities, such as charcoal burning, the court found that Miller did not prove where, when, or how often the activities were performed. Moreover, because *Dudley* bars any pre-1970 evidence, the court appropriately held that the ancestral graves and ruins could not support Miller's claim of adverse possession.

Miller's counsel contended that the most persuasive evidence offered by Miller concerned the grazing of goats and the existence of scattered bits of fencing erected by Miller's uncle. However, the trial court discounted the fencing because no witness was able to locate it on a map or provide the date upon which the fencing was erected. In addition, the fencing was portrayed as standing and falling at various times. With respect to the goats, Miller offered evidence that she, and her uncle before her, released their goats daily to graze on portions of Estate Friise. However, Miller never identified the portion of Estate Friise on which the goats roamed nor that she intentionally led them to Estate Friise for grazing. Furthermore, the court found that the mere sight of goats sporadically grazing on one's land would not lead a landowner to conclude that the owner of the goats was staking a claim to the property.

 Thus, the record denotes that, except for the grazing of goats, Miller was not able to definitely establish that any of the acts were performed continuously for a fifteen-year period following 1970. And, regarding the goats, she was unable to prove that grazing goats on the land of another is exclusive of, hostile to, or adverse to the landowner. As a consequence, the court held that Miller had failed to meet her burden of proving adverse possession by clear and convincing evidence. On appeal, reviewing the trial court's findings of fact only for clear error as the standard requires, we do not conclude that the trial court's determination was "completely devoid of minimum evidentiary support" or that it "bears no rational relationship to the supportive evidentiary data." *See Daniel*, at 329. Accordingly, the trial court did not err in dismissing Miller's claim of adverse possession.

## III. CONCLUSION

First, we hold that the trial court did not commit reversible error when disposing of Miller's Rule 52(c) motion because the court had already determined that Appellants failed to establish another necessary element of their trespass claim. Second, because a motion for substitution was not brought within the statutory two-year time period, we conclude that the trial court did not err in dismissing Hodge's claim. Third, although we conclude that Judge Christian should have disqualified himself from hearing this matter, the trial court did not err in denying Appellants' motion to vacate because they received a new trial on their adverse possession and trespass claims and because the Appellate Division reviewed Judge Christian's partial summary judgment ruling *de novo*. Fourth, we hold that the trial court did not err in dismissing Miller's adverse possession claim. Specifically, we conclude that the trial court properly limited Miller to evidence of post-1970 acts of adverse possession and that the trial court did not commit clear error in finding that Miller's evidence was insufficient to establish the elements of adverse possession by clear and convincing evidence. Accordingly, we affirm the Superior Court's holdings contained in its March 12, 2007 order.